## BISHOP *against* QUINTARD.

In *May* 1833, *A* entered into a covenant with *B*, by which *A* bound himself, his heirs, executors, &c. to keep open, as public highway, a road of sixteen feet in width, *East* of a certain block of buildings, from the turnpike to a landing-place or basin, which *B* was about to construct in the corner lot of *A*, adjoining said block : also to keep open, as public highway, certain other specified ground belonging to *A* on said corner lot, from the time when the canal and basin, for the purpose of constructing which *A* had agreed to convey certain land adjoining said ground to *B*, should be put in navigable condition for sloops of ordinary size ; provided that the boating business should be continued on said canal ; and if it should, at any time, be suspended, for more than six months at a time, *A* should have a right to shut up said highway until such business should be resumed, and no longer ; and if said canal should not be in readiness for navigation within two years from the 1st of *April*, 1833, the obligation should be void. In an action brought by *B* against

*Fairfield,*
July, 1847.

Bishop
*v.*
Quintard.

*A*, on this instrument, the plaintiff, in the first count of his declaration, described the covenant in the language of the first part of the instrument, except that it was alleged that *A* therein covenanted, that he would, at all times after the making thereof, keep open a public highway or road, from the turnpike to the landing-place or basin therein mentioned, which *B* was about to construct, and which, it was averred, he did construct. In the second count, the plaintiff described the covenant precisely as in the first, except that he alleged, that it contained a proviso or condition, that the plaintiff would cause a certain canal connected with said basin, to be in readiness for navigation within two years from the 1st day of *April* 1833, and that the covenant was, to keep open said road, whensoever afterwards said canal and basin should be put in navigable condition for sloops of ordinary size, and that the plaintiff did cause the canal and basin to be so in readiness for navigation within said two years. The defendant, after obtaining oyer of the instrument declared on, and pleading the general issue, pleaded in bar, that the plaintiff constructed and completed said landing-place and basin, and became the owner thereof in fee; and that afterwards, on the 30th of *August* 1841, he conveyed away to *C* and *D* said landing-place and basin, and all the plaintiff's right, title, interest and estate therein ; the defendant averring, that until the time when the plaintiff made such conveyance, he, the defendant, kept open, as public highway, at the place specified in the covenant, a road of sixteen feet in width, from said turnpike to said landing-place and basin, in all respects according to his covenant. On demurrer, it was held, 1. that by the true construction of the covenant in question, its continuance was not limited to the time during which *B* should be the owner of such canal and basin, and therefore, it did not cease to have operation, by reason of the conveyance from *B* to *C* and *D ;* 2. that although this covenant, not being one which runs with the land, could not be assigned, so as to enable the assignee to maintain an action upon it, in his own name, yet it could be enforced by him, in the name of *B*, the original covenantee ; 3. that there was no variance between the covenant, as described in the first count of the declaration, and the covenant on which the action was brought, as shown on oyer; 4. that the covenant, as described in the second count, was variant from both of the covenants in the instrument set out on oyer; 5. that the first covenant in the instrument in question, was not void for uncertainty, as to the time for which the way therein mentioned was to continue.

It is a well settled principle in pleading, that if a party, in setting forth in his declaration a deed on which the action is brought, according to its legal effect, mis-describe it in a material point, the variance constitutes a fatal defect, of which the defendant may take advantage, by craving oyer of it, and setting it out *in hæc verba*, and then demurring generally.

A demurrer by either party, has the effect of laying open to the court, not only the pleading demurred to, but the whole record, for their judgment upon it as to the matter of law ; and such judgment will be against the party who committed the first fault.

And *it seems*, that there is no exception to this rule in cases where the general issue is pleaded, together with special pleas.

Tᴎɪs was an action of covenant broken. The declaration contained two counts.

In the first, it was alleged, that on the 3rd of *May* 1833, the

defendant, by his deed of that date, sealed with his seal, covenanted with the plaintiff, and bound himself, his executors, administrators and assigns to the plaintiff, that he would, at all times thereafter, keep open a public highway or road, of sixteen feet in width, from the turnpike passing through *Stamford*, to a landing-place or basin which the plaintiff was about to construct, and afterwards did construct, in the defendant's corner lot adjoining *Washington* block ; the road to be left open *East* of the then tier of buildings constituting said block ; said block being situated in said *Stamford*, on the corner *South-East* of the *Presbyterian* meeting-house : that relying on said obligation of the defendant, the plaintiff soon after expended large sums of money, in constructing said basin, and did construct the same ; and that said highway was and is necessary for the profitable and convenient use and enjoyment of the same ; yet that the defendant has hitherto wholly neglected and refused to keep open said highway to the width of sixteen feet, and has erected a high wall of brick in and upon a portion of the space so to be kept open by the defendant.

In the second count, the plaintiff averred, that the defendant, by his certain other deed of the date aforesaid, sealed with his seal, covenanted with the plaintiff to keep open, as public highway, a road sixteen feet in width, of the same location and description as that in said first count contained, provided the plaintiff would cause a certain canal connected with said basin, to be in readiness for navigation within two years from the 1st day of *April* 1833, and whensoever after said canal and basin should be put in navigable condition for sloops of ordinary size : that nevertheless, although the plaintiff did cause said canal and basin to be in readiness for navigation within two years, *viz.* on the 1st day of *January* 1834, of which the defendant had due notice, yet the defendant has wholly neglected and refused to keep said highway open to the width of sixteen feet, though often requested so to do ; to the damage, &c.

To each of these counts, the defendant pleaded *non est factum ;* on which issue was joined. The defendant then pleaded four special pleas in bar of the first count. The first of these was as follows : "And for further plea to said first count, by leave of the court, &c., the defendant prays oyer of

*Fairfield,*
July, 1847.

Bishop
*v.*
Quintard.

*Fairfield,*
*July, 1847.*

Bishop
*v.*
Quintard.

said deed in said first count mentioned, and the same is here read to him, in the words and figures following, *viz.* " Know all men by these presents, that I, *Isaac Quintard, Jun.*, of the town of *Stamford*, &c., for and in consideration of ten dollars to me in hand paid, by *Alfred Bishop* of *New-Jersey*, do hereby bind myself, my heirs, executors, administrators and assigns, to keep open, as public highway, a road of sixteen feet in width, from the turnpike to a landing-place or basin, which said *Bishop* is about to construct in my corner lot, adjoining *Washington* block ; the road to be left open, *East* of the present tier of buildings which constitute said block ; said block being situated in said *Stamford*, on the corner *South-East* of the *Presbyterian* meeting-house : also, to keep open, as public highway, all ground belonging to me, on said corner lot, *West* of the store, now occupied by *W. & R. Hoyt*, and all ground *West* of a *North* and *South* parallel line, with the front shed or stoop of said store, and which is *North* of an *East* and *West* line, designated as a boundary line, between said lot or corner and land which I have agreed to convey by deed to said *Bishop*, for the purpose of a canal, basin, wharf, &c.; said ground to be kept open by me as a highway, from the time said canal and basin is put in navigable condition, for sloops of ordinary size ; forever provided, that the boating business is continued on said canal ; and should it at any time be suspended, for more than six months, at any one time, I to have a right to shut up such highway, until said business shall be resumed, and no longer ; but if said canal should not be in readiness for navigation within two years from the 1st day of *April* 1833, then this obligation to be null and void, otherwise to be in full force and effect. In witness of the foregoing, I have hereunto set my hand and seal, this third day of *May* 1833. [Signed.] *Isaac Quintard, Jun.*" [L. S.] Whereupon the defendant here in court, defends, pleads and says, that the plaintiff of having and maintaining his said action on said first count, against him, ought to be barred, because he says, that at the time of the execution of said deed, the plaintiff was, as in said deed is shown, about to construct a landing-place or basin in said corner lot of the defendant, and contemplated and intended to be the owner of such landing-place or basin ; and soon after, and long before the 30th day of *August* 1841, *viz.* on or about the 2nd of *October* 1833, he did con-

struct and complete said landing-place and basin both, and then became, pursuant to his said intention, the owner thereof in fee, and as such, had an interest and estate therein ; and thenceforth continued to be such owner thereof, and to have such interest and estate therein, until afterwards, *viz.* on or about said 30th day of *August* 1841, when the plaintiff, by deed duly executed, attested and acknowledged, and legally sufficient for that purpose, did transfer and convey away from himself to *Edwin Bishop* and *Morris Bishop*, of said *Stamford*, and *Leander Bishop*, of *Rye*, in the state of *New-York*, said landing-place and basin ; and all his, the plaintiff's right, title, interest and estate, in or to said landing-place or basin, and thereby entirely ceased to own, possess or have any right, title, interest or estate in or to said landing-place and basin, or either of them : and the defendant says, that at all times ever from and after the execution of said deed, in said first count mentioned, to and until the time when the plaintiff, so as aforesaid, transferred and conveyed away his said right, title, interest and estate, and long after, he, the defendant, did keep open, as public highway in said place, in said deed mentioned, *viz. East* of said tier of buildings in said deed mentioned, a road of sixteen feet in width, from said turnpike in said deed mentioned, to the place where said landing-place and basin, as in said deed mentioned, were constructed, until they were constructed, and thenceforth to them, and each of them, after they were so as aforesaid constructed by the plaintiff, in all respects according to the tenor of said deed, in said first count mentioned, and of the covenant therein contained : and so the defendant says, he has, in all respects, kept, fulfilled and performed said covenant in said first count mentioned, according to the true intent thereof: all of which he is ready to verify."

The second special plea varied from the first, only by including the canal in the transfer.

The third special plea was as follows: " And for further plea in this behalf to said first count, by leave of the court, &c., the defendant, after oyer of said deed in said count mentioned, and the reading of the same to him, [as set forth in the first special plea,] here in court, defends, pleads and says, that the plaintiff of having and maintaining his said action, on said first count, against him, ought to be barred, because he

*Fairfield,*
July, 1847.

Bishop
*v.*
Quintard.

*Fairfield,*
*July, 1847.*

Bishop
*v*
Quintard.

says, that at the time of the execution of said deed, the plaintiff was about to construct the basin or landing-place in said deed mentioned, in said corner lot of the defendant, and contemplated and intended to be the owner of said landing-place and basin ; and soon afterwards, and long before said 30th day of *August* 1841, *viz.* on or about the 2nd day of *October* 1833, he did construct and complete said landing-place and basin, and then, pursuant to his said intention, became the owner thereof in fee, and as such, had an estate and interest therein, and thenceforth continued to be so the owner thereof, and to have said interest and estate therein, until afterwards, *viz.* on or about said 30th day of *August* 1841, when the plaintiff, by deed duly executed, attested and acknowledged, and legally sufficient for that purpose, did transfer and convey away from himself, to said *Edwin, Morris* and *Leander,* in the two next preceding pleas mentioned, said landing-place and basin, and all his the plaintiff's right, title, interest and estate in and to said landing-place and basin in said second count mentioned, and thereby entirely ceased to own, possess or have any right, title, interest or estate in or to said landing-place and basin, or either of them ; and said *Edwin, Morris* and *Leander* thereupon took possession of said landing-place and basin, and had such possession, until afterwards, *viz.* on or about the 16th day of *April* 1842, when, by deed legally sufficient for that purpose, they re-conveyed said landing-place and basin to the plaintiff, who, soon after, *viz.* on or about the 17th day of *April* 1842, by deed duly executed, attested and acknowledged, and legally sufficient, transferred and conveyed away from himself to said *Edwin Bishop*, said landing-place and basin, and all his the plaintiff's right, title, interest and estate in and to them, (said last-mentioned deed being a mortgage deed,) and immediately thereafter, *viz.* on or about said 17th day of *April,* the plaintiff, by his quit-claim deed, duly executed, attested and acknowledged, and legally sufficient for that purpose, did convey away from himself to *James C. Loomis*, Esq., of *Bridgeport*, all his the plaintiff's remaining right, title, interest and estate, in and to said landing-place and basin, and all his equity of redemption, and thereby ceased entirely to own, possess or have any right, title, interest or estate in or to said landing-place and basin, or either of them ; and thereupon said *Edwin Bishop* did enter into and take

entire possession of said landing-place and basin, and ever afterwards to and until the commencement of this action, had such possession : and the defendant says, that ever, at all times from and after the execution of said deed to and until the time when the plaintiff so as aforesaid, after said conveyance to him, transferred and conveyed away said landing-place and basin, to said *Edwin Bishop* and to said *James C. Loomis*, as herein above-mentioned, and long after, he the defendant did keep open, as public highway, at said place in said deed mentioned, *viz. East* of said tier of buildings in said deed mentioned, a road sixteen feet in width, from said turnpike in said deed mentioned, to the place where said landing-place and basin were constructed, as in said declaration mentioned, until they were so constructed, and thenceforth to them, and each of them, after they were so constructed, in all respects according to the tenor of said deed, and of the covenant therein contained ; and so the defendant says, he has, in all respects, kept, fulfilled and performed the said covenant in said first count in said declaration mentioned ; all of which he is ready to verify."

The fourth special plea varied from the third, only by including the canal in the transfer.

To each of the special pleas, the plaintiff demurred ; and the questions of law arising upon the demurrer to such pleas, were reserved for the advice of this court.

*Hawley*, in support of the demurrers, contended, 1. That the plaintiff was not entitled to recover damages for a breach of the covenant after he had ceased to have any interest in the subject matter. The instrument in question contains two distinct covenants, regarding two distinct ways. The qualifications and conditions of the second, do not at all affect or pertain to the first. The first covenant, on which the action is brought, prescribes no time for the continuance of the way. If valid at all, it can, at the utmost, be regarded as a covenant for the plaintiff's benefit, while he should be interested in the basin, and no longer. It cannot be a covenant for a way *in fee simple ;* for there is no intimation to that effect, and its language, as well as that of the second covenant, shows this was not intended.

2. That on any construction, the covenant shown does not

*Fairfield.*
July, 1847.

Bishop
*v.*
Quintard.

support the declaration : there is a clear variance between them.

As to the first count. That avers, that the way was to be kept open " *at all times* thereafter." If it be considered a way in fee simple, it would of course be independent of the continuance of the canal ; which would be absurd. If for life, the same objection would apply. Besides, the averment is, not for the plaintiff's life, but *at all times thereafter*. If the qualifications of the second covenant could be considered as applicable to the first, the variances are very clear ; for the declaration avers, that it was to be kept open at all times *unconditionally ;* yet the covenant requires it only from the time the canal shall be put in condition for sloops, &c.—that the boating business should be continued, &c.—that the canal should be in readiness within two years, &c.

As to the second count. Besides other matters, that avers, that it was to be kept open from and after the time when the canal should be put in condition for sloops, &c., without any qualification. But the covenant contains a qualification—provided the boating business should be continued, &c.

3. That the first covenant is void for uncertainty as to the continuance of the way.

*Dutton* and *Ferris,* for the plaintiff, contended, 1. That as the consideration contained in the deed was advanced by the plaintiff, a promise to him is implied. Such promise the plea admits, because it does not deny it. It therefore admits a cause of action, unless it contains some other facts, that take away the right of action.

2. That the allegation that the land to which the highway led, was conveyed away, before the breach, is no answer. This was not a covenant running with the land. To constitute such a covenant, there must be a *privity of estate* between the parties. *Per* Lord *Kenyon,* Ch. J. 3 *Term R.* 402. The covenantee must have the legal estate. *Webb* v. *Russell,* 3 *Term R.* 393. *Stokes* v. *Russell,* 3 *Term R.* 678.

3. That the other exceptions taken by the defendant, are equally groundless.

STORRS, J. We agree with the counsel for both of the parties in this case, that the instrument declared on, and of

*Fairfield,*
July, 1847.

Bishop
*v.*
Quintard.

which oyer is given, contains two several and distinct cove-
nants; one, that the defendant would keep open, as public
highway, a road of sixteen feet in width, *East* of the tier of
buildings constituting *Washington* block in *Stamford*, from
the turnpike to a landing-place or basin which the plaintiff was
about to construct in the corner-lot of the defendant, adjoin-
ing said block : the other, that the defendant would keep open
forever, as public highway, certain other specified ground be-
longing to him on said corner-lot, from the time when the
canal and basin, for the purpose of constructing which the de-
fendant had agreed to convey certain land adjoining said
ground to the plaintiff, should be put in navigable condition for
sloops of ordinary size; provided, that the boating business is
continued on said canal; and that, if it should at any time be
suspended, for more than six months at any time, the defend-
ant should have a right to shut up said highway until said busi-
ness should be resumed, and no longer ; and that if said canal
should not be in readiness for navigation within two years
from *April* 1st, 1833, the said obligation should be void.    We
also concur with them, that, by the true construction of this
instrument, these conditions and qualifications, unless it be the
last, (which it is unnecessary to notice here,) are to be deemed
applicable exclusively to the last of these covenants.

The declaration contains two counts.    In the first, the cov-
enant is described in the very language of the first covenant
contained in this instrument, excepting only that it is alleged,
that the defendant therein covenanted, that he would, *at all
times after the making of it,* keep open a public highway or
road from the turnpike to the landing-place or basin therein
mentioned, which the plaintiff was about to construct, and
which, it is alleged, he afterwards did construct.    In the sec-
ond count, the covenant is described precisely as in the first
count, excepting that it is alleged, that it contained a proviso
or condition, that the plaintiff would cause a certain canal
connected with said basin, to be in readiness for navigation
within two years from the 1st day of *April* 1833 ; and that
the covenant was to keep open said road whensoever after-
wards said canal and basin should be put in navigable condi-
tion for sloops of an ordinary size ; and that the plaintiff did
cause the canal and basin to be so in readiness for navigation
within the said two years.

After obtaining oyer of the instrument declared on, the defendant has pleaded *non est factum,* and four similar special pleas in bar to each of the counts.   The first of said special pleas alleges, in substance, that, at the time of the execution of said instrument, the plaintiff was about to construct a landing-place or basin, as mentioned therein, and contemplated and intended to be the owner of the same ; and soon after, and before the 30th of *August* 1831, did construct and complete it, and became the owner thereof, and as such owner, had and continued to have an interest and estate therein, until about the day last mentioned, when the plaintiff, by his deed duly executed, conveyed to *Edwin Bishop* and two other persons named, said landing-place or basin, and all his right, title, interest and estate in or to the same, and thereby ceased to have or own any right, title, interest or estate therein ; and that, at all times after the execution of said instrument, and until after the execution of said conveyance, the defendant did keep open as public highway in said place mentioned in said instrument, a road of the width, and from the turnpike to the landing-place or basin, therein mentioned.

The second special plea is like the first, excepting that it alleges, that the canal with which the landing-place or basin was connected, was also conveyed.

The third special plea differs from the first, and the fourth from the second, only in the mode in which they allege that the plaintiff had divested himself of all his interest and estate in the landing-place or basin and canal.

To each of these special pleas there is a demurrer.

The covenant declared on in both counts being conversant only with a highway or road of the precise width of sixteen feet, on the *East* side of *Washington* block, from the turnpike to the landing-place or basin, it is obvious, and indeed is conceded, that the questions involved in the pleadings, depend on the construction and effect of the first covenant contained in the instrument set out on oyer ;   since the other covenant relates to a highway in another place, and without defining the width of which it shall consist.   The second of said covenants may, therefore, be disregarded, excepting so far as, being in the same instrument, it may serve to throw light on the construction which should be given to the first.

The pleas in bar are not attempted to be supported, by the

defendant, on the ground that the covenant in question is a *Fairfield,* July, 1847. real covenant of that description that it runs with the land; and that, therefore, an action on it can only be maintained by the assignee, for a breach accruing after the assignment. It is conceded, that it is merely a personal covenant; and that, therefore, no action upon it can be sustained, by any other person than the plaintiff. This supersedes the necessity of an enquiry as to the nature of this covenant.

Bishop *v.* Quintard.

But the ground on which the defendant claims, that the matter set up in the special pleas is an answer to the merits of the action on the covenant in question, is, that by the true construction of the covenant, it lasted no longer than the plaintiff continued to own or enjoy the canal and basin for the use of which the highway was to be kept open; and that, therefore, when he divested himself of them, as stated in the pleas, it ceased to have any operation. We do not accede to so limited a construction of this covenant. It does not accord with the intention of the parties, as evinced by the language used, the object contemplated by them, and the subject matter of the agreement. Whether it was designed, that the highway should be kept open, after the canal, as such, should be discontinued or cease to exist, it is unnecessary to determine; but there is no ground to believe, that it was intended that the covenant should operate no longer than while the plaintiff himself continued to be the owner of it. The canal is a species of property, which is not only permanent in its nature, but may naturally be expected to grow more valuable to its proprietors continually, by the increase of transportation upon it; and the ultimate advantages of it could not be expected to be realized by the plaintiff, during the comparatively short time that he could personally enjoy it, even if he should not part with it. But it is also property which may be alienated; and it cannot be supposed, that the plaintiff intended to deprive himself of the benefit of disposing of it, with all the advantages appertaining to it, if his convenience or interest should require it. One, and indeed the most important, of those advantages, and which would essentially enhance the value to the owner, as well as to the public, would be a free communication for the public between it and the great thoroughfares in its vicinity, to last as long as the canal itself should exist. Indeed, no person would be so improvident as

to embark in the construction of a work of this character, which was destined to facilitate the commerce between the ocean and the adjacent country, if the privilege of landing from it, and embarking upon it, articles of transportation, was to be enjoyed only at the will or caprice of the owner of the land adjoining it. To secure the permanent and unmolested enjoyment of that privilege, must have been the great object of the covenant in question. This covenant, it is true, could not be assigned, so as to enable the assignee to maintain an action upon it, in the name of himself or his representatives ; but it could be enforced by him, in the name of the plaintiff, or his executors or administrators ; and its assignment would be protected in a court of equity. The assignee, therefore, would have the same benefit of it, substantially, as if it were transferable at law, or, if assigned to the grantee of the canal, as if it run with the land over which it was made ; and this power of assignment would enable the plaintiff to dispose of the canal, when he otherwise would not be able to do so, or at least on better terms than he otherwise could. The covenant was clearly intended to benefit the plaintiff, not only by enabling him to use the canal most advantageously, while he should continue to be the owner of it, but also to enable him to avail himself of its full value, by transferring the same use of it to others, if he should have occasion to do so.

This construction is strongly confirmed, by the language in which the covenant is expressed. The terms of it as to the time during which the road is to be open, are general and unlimited ; and, if it were otherwise doubtful as to time, the construction should be unfavourable to the covenantor; but the defendant agrees further, to "*keep* it open as public highway"—terms strongly implying permanency and indefinite duration ; and it was to be kept open from the turnpike to the landing-place or basin, which also implies, that it was to continue at least as long as it should be wanted for that object. In addition to this, the plaintiff covenants " for himself, his heirs, executors, administrators and assigns ;" and although the words " heirs and assigns," do not change it from a personal to a real covenant, yet they, with the other words with which they are associated, and which imply permanency, are proper to be considered in ascertaining the intention of the parties as to the duration of the agreement. The special

pleas in bar, therefore, constitute no defence to this action on the merits.

The defendant, however, further claims, that there is a variance, in each of the counts of the declaration, between the covenant therein described, and the first covenant in the instrument given on oyer, upon which alone this action is confessedly brought; and that he, therefore, is entitled to judgment. Such must be the result, if this exception is well founded.

It is an established rule, that a demurrer by either party, has the effect of laying open to the court, not only the pleading demurred to, but the whole record, for their judgment upon it as to the matter of law ; and that, if two or more of the pleadings be bad in substance, the court will give judgment against the party who committed the first fault. *Foster* v. *Jackson, Hob.* 56. 1 *Wms. Saund.* 285. (n. 5.) If therefore the declaration be bad, there shall be judgment against the plaintiff, although the plea in bar be insufficient. 5 *Co.* 29. *a. Com. Dig. tit.* Pleader. M. 1. M. 2. It was indeed stated, by the supreme court of *New-York,* in the cases of *Wheeler* v. *Curtiss,* 11 *Wend.* 653. *Dearborn* v. *Kent,* 14 *Wend.* 183. and *Russell* v. *Rogers,* 15 *Wend.* 351. that there was an exception to this rule, where the general issue was pleaded together with special pleas : but it was not necessary to decide that point in those cases ; and in *Miller* v. *Maxwell,* 16 *Wend.* 9. it was held otherwise. In that case, the general issue and two special pleas were pleaded, and the plaintiff demurred to the special pleas, which were adjudged to be bad : but the defendant was allowed to attack the declaration, which was also held to be bad, and judgment was rendered against the plaintiff. And in *Auburn and Owasco Canal Co.* v. *Leitch,* decided by the same court, in *January* 1847, (*Law Reporter* for *September* 1847. *p.* 201.) the cases above-mentioned were reviewed, and the above exception was discarded ; and it was held, that, under the statute allowing the defendant to plead more than one plea, he takes the right with all its legitimate consequences, one of which is, that whenever there comes a demurrer upon either of two lines of pleading, he may run back upon that line, to see which party committed the first fault which would make the pleading bad on general

demurrer; and that against that party judgment will be rendered.

It is also a well-settled principle in pleading, that if a party, in setting forth in a declaration a deed, on which the action is brought, according to its legal effect, misdescribe it in a material point, the variance constitutes a fatal defect in the declaration, of which the defendant may take advantage, by craving oyer of it and setting it out *in hæc verba*, and then demurring generally.    1 *Wms. Saund.* 9. *a.* 316. 317.    1 *Salk.* 72.    2 *Ld. Raym.* 715.    *Sty.* 459.

The defendant claims, that the covenant, as described in the first count of the declaration, is, that the highway therein mentioned, shall be kept open by him forever; for that it is alleged, that the defendant covenanted to keep it open *at all times after* the execution of the instrument; but that such at least is not the construction of the covenant as given on oyer; and that if the meaning of the latter is, that it shall be kept open only during the existence of the canal, there is a variance between them.    We think that the defendant has mistaken the import of the covenant as set out.    It is not merely that the defendant will keep open the road at all times thereafter; but that he will at all times thereafter keep it open from the turnpike to the canal.    The true import of this expression is, that he will thereafter keep it open between these two *termini*, constantly and uninterruptedly;—that it shall not, for instance, be kept open one day, and shut the next; and that, we have no doubt, is the true meaning of the covenant declared on.    The words " at all times thereafter," in the connexion in which they are here used, would not, in the covenant itself, neither does it in the covenant as described in the declaration, vary or add to what would be the meaning of either, if those words were omitted.    An agreement merely to keep open the road between the two places mentioned, would mean, that it should be kept open constantly, and at all times, during the period for which the covenant was to operate.    That it should operate as long as the canal shall continue to exist, we have no doubt.    Whether, by a fair construction of it, it should last forever, even after it may cease to exist, it is unnecessary to consider.    That would depend on the question, whether the words " turnpike," and " landing-place or basin," are to be deemed as designating the things or

the places between which the road was to be kept open. If the former, which would limit the operation of the covenant to the time during which the canal should exist, it is, according to the construction we put on it, to be kept open, uninterruptedly and constantly, during that time; and this is also the construction of the description of it in the first count. If the latter, which would import that it was to be kept open forever, the description of it in that count, is in the very words of the covenant, and consequently, carries the same import; and the words, " at all times thereafter," in any view, do not limit, but in that taken by the defendant, only defines or expresses that meaning with greater precision. The objection of variance, therefore, is not well founded, as it respects the first count.

It is also claimed, that the covenant, as described in the second count, is variant from either of the covenants in the instrument set out on oyer. It is claimed to be variant from the first of said covenants, for that, in the first place, it is stated that the covenant is qualified with a condition that the plaintiff would cause a certain canal connected with the basin, to be in readiness for navigation within two years from the first of *April* 1834; and that it is also restricted in its operation to the time after which said canal and basin should be put in navigable condition for sloops of an ordinary size; whereas the said covenant is not thus qualified nor restrained. These exceptions are well taken. As has been already mentioned, we are of opinion, and it is conceded by the parties, that the two covenants in the instrument declared on, are distinct and separate from each other; and the qualifications in the second are clearly not attached to the first. The covenant described in the second count, is also claimed to be variant from the second covenant contained in said instrument, in several particulars, and among others, because it is stated that the covenant is to keep open a road of a specified width, *viz.* sixteen feet, whereas no particular width is designated in that covenant; and also because that covenant provides for keeping open a road in a different place from that described in the second count. These variances are very palpable, on inspection. And a reference to the authorities clearly shows them to be material and fatal. *Clarke* v. *Gray,* 6 *East* 570. *Lees* v. *Manchester and Ashton Canal Co.,* 11 *East* 653. &

seq.  *Miles* v. *Sheward,* 8 *East* 7.   1 *Saund. Pl. & Ev.* 120.
145.

The defendant further claims, that the first covenant in said instrument, is void for uncertainty, because it neither limits, nor refers to any thing, by which to ascertain the time for the continuance of the way therein mentioned.   The view which we have already expressed, respecting this covenant, shows this objection to be unfounded.

The result is, that the special pleas to the first count are insufficient, and those to the second count are sufficient; and the superior court is advised to render judgment accordingly.

In this opinion the other judges concurred.

Demurrer to special pleas to first count, sustained; to second count, overruled.