FERNANDO A. UNDERWOOD, APPELLANT, vs. ELLEN UNDER-WOOD, APPELLEE.

1. Where, upon bill filed, a decree of divorce a *vinculo matrimonii*, and of reference to master to report as to allowance for alimony, is passed upon the consent and agreement of the parties, an appeal from the order confirming the report when made, and fixing the alimony, opens for consideration under the statute of this State the decree of divorce, and though the parties may not desire to disturb the decree of divorce, it will be reversed if improperly granted.

2. A decree of divorce from the bond of matrimony cannot be entered properly upon the mere consent or agreement of the parties of record. There must be a complaint of due form, for a cause authorized by law, *supported by due proof*.

3. *Ad interim* alimony, or alimony *pendente lite*, as well as the allowance of a sum to the wife to enable her to prosecute her suit, are given not as of strict right in the wife. It is a matter for the sound discretion of the court.

4. If no order awarding alimony *pendente lite* or counsel fees is made until after a decree for divorce, such an order under the statute should not be then made unless the nature of the case makes it " fit, equitable, and just."

5. Where the wife has brought her case to a hearing before such an order is made, no allowance, either for alimony or costs of counsel, should be made where the case from the evidence and the pleadings is one in which she had no reasonable ground of suit.

Appeal from the decree of the Circuit Court of Alachua county.

A statement of the case appears in the opinion of the court.

*J. B. Dawkins*, for Appellant.

*C. P. Cooper*, for Appellee.

Fernando A. Underwood vs. Ellen Underwood—Opinion of Court.

HART, J., delivered the opinion of the court :

This is an appeal from a decree in chancery rendered in Alachua county by the judge of the circuit court for Suwannee Circuit, in a suit by Ellen Underwood against Fernando Underwood for divorce *a vinculo matrimonii*, and for alimony *pendente lite* and permanent, on the ground of extreme cruelty. The motions to dismiss this cause having been overruled, the court proceed to consider it.

Upon the reading of the record it is found to consist of, the bill, præcipe, and subpœna; the answer, an agreement of the parties by their solicitors that the court shall make a decree divorcing the parties from the bonds of matrimony, and that the questions of alimony, both *pendente lite* and permanent, with costs of court and counsel's fees, be referred to a special master to take testimony, to be referred to the court at such time as the court may order; a decree of divorce, and reference to the master to take testimony and make his report in accordance with the above agreement ; the testimony ; the decree of alimony, cost and fees ; the citation, the appeal bond, the certificate of the clerk ; the petition of appeal ; and the order of one of the justices of this court making the appeal a supersedeas.

The decree for alimony, costs and fees, was argued *pro* and *con* by the solicitors of the parties, both being content with the decree of divorce.

The statute authorizes decrees for alimony in cases of divorce for extreme cruelty. The question of alimony in such a case depends as much upon the truth of the charge of extreme cruelty as that of divorce does; if, therefore, in this case there is not sufficient cause for the one, it is not seen how there can be for the other.

The evidence purports to give the deportment of the parties to each other from the time of the marriage to the time of the separation, and upon the subject of extreme cruelty is substantially as follows :

Edward R. Pooser, a witness for complainant and her brother-in-law, in whose family she resided at the time of the marriage, and to whom she returned when she left her husband, and who knows the defendant, testifies that he knew of no unkind treatment by defendant or his children. Complainant, on the occasion of her return to his house, did not complain of any unkind treatment, but stated that she never received any unkind treatment from defendant, and would be willing to live with him in a bark cabin were it not for his children. She could not consent to stay there during defendant's absence, on account of his two daughters. That she had no idea of abandoning him at that time, and that he expected to be absent one night and perhaps two.

Mrs. Annie Pooser testified that she is acquainted with the parties, and intimately acquainted with defendant's children. The day before complainant left, heard defendant's daughter, Julia, about eighteen years of age, say that she would put complainant out of the house or be put out herself. Thinks complainant is dependent upon her own exertions for a support. Has known her since 1861. She is a lady of refined feelings and sentiments. Both she and defendant's family moved in the highest circles of society. The conversation with defendant's daughter occurred at the house of witness's father. Julia appeared to be vexed at the time. Knows of no unkindness or cruelty by defendant to complainant. Was at defendant's house several times after the marriage. Defendant always treated complainant with perfect kindness in witness's presence. Saw no unkindness by defendant's children to complainant, in presence of their father.

Complainant sworn, testified that while living with defendant as his wife, she was annoyed by information of others that she would be put out of the house by his daughters during his absence. There never was any unpleasantness besides the above stated facts. The children demeaned themselves towards her a part of the time as if they were her own. The threat that was brought to her put her in fear of rude violence ; this was the moving cause ; defendant was to be absent that night and re-

turn next day; he was preparing to leave, when she told him that she wanted to leave and return to the house of her brother-in-law; it was very unpleasant for her to live there on account of the manner in which she was treated, and she preferred to have other arrangements made; he said he could not put his children out of the house; that if she left without his consent, she could not return with his consent; and she left without his consent on the fifth of July; was at home all day on the fourth; received the above-mentioned information on the fourth; that information was the only and sole cause of her leaving; he said he had promised Mr. Weed, and was going to hunt with him, on a pleasure trip, expecting to be back that night or next morning; she told him that if he left home to go to Mr. Weed's, she would leave too; he begged her not to leave, that she had better think more about the matter, and not act too hastily; she replied that she intended to go, if she had to walk; that she would rather live with Annie and her children than live in the manner in which she had been living. Their interview was about fifteen minutes long, and all the while he used his efforts to get her to remain. He said: "Ellen, if you will go, don't walk, but take my horse and buggy." He asked her what was the matter and what he could do to reconcile her; she did not then tell him the information that had been conveyed to her the day before, but said that she was afraid to remain at home on account of a difficulty that had arisen between the children and herself; that she was very much displeased with the conduct of one of the children towards her the past two or three days. There was no unkindness on his part nor any of the children except Julia. She did not apprehend any violence from Julia until the said information of the fourth. She had no cause before that; it was the sole cause. He asked her if he had done anything to make her leave; she answered No. He asked her if there was anything that he could do to keep her there; she answered No, only one condition, which was that he would separate her from his daughter.

There is no other testimony except that of the defendant himself, who it seems was also examined, and it is not thought necessary to insert it here.

They were married; lived together three months; the wife left her husband under the above-mentioned circumstances, and sued him for divorce and alimony on the ground of extreme cruelty. The evidence does not show that there was any ill treatment whatever, much less any cruelty. As in such a case the question of the granting a decree for divorce and for alimony, depends entirely upon the proof of extreme cruelty, if there is no proof of it, there should be no decree for either.

It is stated that the appellant has not appealed from the decree of divorce, but only from that of alimony. If he expects the latter to be reversed for want of proof of the charge of extreme cruelty, it is not seen how, under the statute invoked in this case, it can be expected that the former should stand. Under the statutory provisions applicable to this case, the evidence in support of one applies to the other; if it does not support the one, there is no foundation for the other. To affirm the one and reverse the other would simply subject the law to ridicule.

It is the duty of this court to examine the record; to reverse or affirm the judgment, sentence, or decree of the court below; to award a new trial in the court below, or to give such judgment, sentence, or decree as the court below ought to have given, or as to this court may appear according to law. Thompson's Digest, 449.

An appeal in chancery is substantially a re-hearing of the cause, and the appeal opens the whole case to the respondent, &c. 4 Florida R., 359.

Upon a careful consideration of the case as presented by the record, it is evident that neither the decree of divorce nor that of alimony ought to have been made. It is therefore ordered, adjudged, and decreed that the said decrees are reversed and set aside; and that this cause be remanded to the circuit court for such proceedings not inconsistent with this opinion as to law and equity shall appertain.

WESTCOTT, J., delivered the following opinion in this case :

This case is one of no small importance; its effects extend to society at large; and while I concur in the judgment of the court, and am content with it, I desire to state my own views.

This is a bill by the wife against the husband praying divorce *a vinculo matrimonii*, alimony *pendente lite*, and permanent alimony, upon the ground of extreme cruelty. The answer denies the facts of the bill upon which the charge of extreme cruelty is based, and expressly avers that every means was used to contribute to the happiness and comfort of the wife, and that her separation and departure from the household of the husband was in the face of his repeated "remonstrance," and was a voluntary abandonment without a semblance of reason or excuse, and for which the wife herself gave no excuse except "that she wished to go back and live with Annie, then Mrs. Pooser, and the children, and that no other reason was ever assigned to him," the husband.

Following the answer appears this agreement :

ELLEN A. UNDERWOOD VS. FERNANDO UNDERWOOD.

In the above-entitled cause, counsel for complainant and defendant have agreed that this court shall make a decree divorcing the parties from the bonds of matrimony, and that the questions of alimony, both permanent and *pendente lite*, with costs of court and counsel fees, be referred to a special master to take testimony, to be referred to this court at such time as this court may order.　　　　J. B. DAWKINS,
　　　　　　　　　　　　　　　　　　T. A. McCONNELL,
　　　　　　　　　　　　　　　　　　C. P. COOPER.

Immediately following this agreement, and without any evidence, the following decree appears in the record:

"It is ordered, adjudged, and decreed that a divorce *a vinculo matrimonii* be granted in the above-entitled cause, and the

master be and is hereby ordered to take testimony, and make his report in accordance with the above agreement on or by the rule day in February, in reference to alimony *pendente lite*, permanent alimony, costs of court, and complainant's counsel fees to be paid by defendant."

Following this decree appears the testimony of several witnesses, which has been stated by the court, and a decree allowing two hundred and fifty dollars for alimony *pendente lite*, two hundred dollars per annum permanent alimony, and three hundred dollars counsel fees, and one hundred dollars to the master for his compensation, and directing an execution to issue in favor of complainant's counsel.

From this decree an appeal is taken by the defendant. The decree of divorce in this case is made without any reference to any testimony, but so far as the record discloses entirely upon the basis of the agreement of the counsel. All the testimony taken in the case appears upon a reference to determine other matters, such as alimony, and even if support for the decree could be derived from testimony taken upon a reference after the decree is passed, there is nothing here to support it.

This evidence does not establish cruelty. Evans vs. Evans, 1 Hag., 35 ; 4 Eng. Ec. Rpts., 310, 311 ; 7 Eng. Ec. Rpts., 114, 105.

In Evans vs. Evans, Lord Stowell says: "What merely wounds the mental feelings is in few cases to be admitted, where not accompanied with bodily injury, either actual or menaced. Mere austerity of temper, petulance of manners, rudeness of language, a want of civil attention and accommodation, even occasional sallies of passion, if they do not threaten bodily harm, do not amount to legal cruelty. They are high moral offenses in the marriage state, undoubtedly, not innocent surely in any state of life, but still they are not that cruelty against which the law can relieve. Under such misconduct of either of the parties, for it may exist on one side as well as the other, the suffering party must bear in some degree the conse-

quences of an injudicious connection, must subdue by decent resistance or prudent conciliation, and if this cannot be done both must suffer in silence."

It is unnecessary to make any further extract from this, a leading case upon this subject, or to refer to other cases, for the purpose of showing the utter failure of the proof in this record to sustain an allegation of cruelty, much less extreme cruelty, even though it could be made available to sustain the decree, which it cannot.

It is not required in this case to define accurately what constitutes legal cruelty. It is enough that the evidence here does not establish what constitutes cruelty, even under its most loose definition in any respectable court.

In a late case reported in the American Law Review, it was held that "habitual drunkenness, a series of annoyances and extraordinary conduct, do not constitute legal cruelty." Brown vs. Brown, Law Rep., 1 P. & D., 46.

This appeal taken from the decree for alimony, which is had under the 8th and 10th paragraphs of Sec. 3, Thomp. Dig., 223, (Duval's Compilation, 81–83,) necessarily brings under review the decree for divorce.

The right of the wife to alimony has no common law existence as a separate independent right, but whenever found it comes as an incident to a proceeding for some other purpose, as for a divorce, no court in England having any jurisdiction to grant it where it is the only relief sought. Bish. M. & D., 352; 3 Atk., 547; 2 Ves., 191, 195.

There is no doubt from the language of this section (the 10th) that the alimony mentioned is an incident of the decree for divorce dependent upon the "nature" of the divorce suit, while under the 14th and 15th paragraphs of our statute, Thomp. Dig., 224, the alimony is not such as is incidental to divorce, but refers to support and maintenance of the wife under certain circumstances without forcing her to a divorce. This was the construction given to Secs. 14 and 15, in Chairs vs. Chairs, 10 Fla.,

40

316. We cannot properly determine the propriety of the order for alimony under this section of our statute without looking at the whole record of the case, and determining the propriety of the decree for divorce upon which it is based, and when the parties appeal from the decree allowing alimony upon such a record as is now before the court, where it is substantially the same proceeding, they necessarily open the decree for divorce for our inspection; and the fact that the appeal is taken from the order for alimony alone would not justify this court in failing to reverse the decree for divorce, if it is clearly wrong.

In awarding alimony the law requires that "the nature of the case" shall be considered by the court; and while the proceeding for divorce is had under the 8th section, and the proceeding for alimony under the 10th, they *are in this case* but parts of the same proceeding, the one depending upon the other, both in the same bill. The decree directing a reference is based upon the agreement and the consent, and is a part of the same decree which orders "that a decree of divorce *a vinculo matrimonii* be granted." What I here say refers to alimony under the statute, and I do not propose to determine whether alimony *pendente lite* is referred to or the granting of it controlled by the statute. I examine this question subsequently.

The decree for divorce here is based upon an agreement of counsel without a particle of evidence to establish the charge, the answer at the same time denying the material facts in the bill.

"No decree of divorce from the bond of matrimony can be entered by the court upon the mere consent or agreement of the parties of record. There must be a complaint of due form, for a cause authorized by law, supported by due proof." 1 Paige, 276; 4 John. Ch'y, 501; 1 John. Ch'y, 488; 2 Paige, 62; 3 Ed. Ch'y, 469; 1 Barb., 27; 16 Ark., 527.

Say the chancellors in 1 John. Ch'y, 490, and in 1st Paige, 277: "To guard against all kind of improper influence, collusion, and fraud, it is the policy of the law not to proceed upon the

ground of the consent of parties to a dissolution of the marriage contract. It would be aiming a deadly blow at public morals to decree a dissolution of the marriage contract merely because the parties requested it."

There is a manifest difference between cases of this character and those ordinary actions where consent of parties can modify or control the action of courts. Ordinarily the court may enter a decree as desired by the parties, in the event it affects their interests alone. There is at least nothing improper in it. The language of the chancellors, above quoted, would seem clearly to establish the reverse of the proposition in suits of this character, and what is there stated clearly illustrates this difference. So far has this doctrine been carried that courts will not even sustain agreements in reference to the incidental matter of alimony until it is found on inquiry to be fair and equitable. 5 Paige, 509; 6 Haw. & J., 485; 4 Dess., 560.

What creates the difference is that the husband and wife are not the only persons whose interests are affected, or whose desires are to be consulted in suits of this character. 2 Bish. Mar. & Div., 234, 235.

The chancellor below should disregard their consents in the proceedings before him, and it is no less the duty of this court in this class of cases to disregard their wishes here, if in following their desires and restricting ourselves to the consideration of only such portion of the record as they call to our attention, we inflict a wrong upon the public, and give efficacy to a system of practice which, if continued, must result in disaster to the well-being of society.

Courts fail to do their duty, if by following the wishes of parties the continuance of marital relations is permitted to become a matter resting upon no surer basis than the fancies of those who have taken upon themselves their solemn and extended responsibilities.

It has been properly remarked that a divorce suit may be regarded as a civil suit between three distinct parties, the

Government, the plaintiff, and defendant. It is the office of the Government to protect the interests of the public, the welfare of the entire community whose interests are involved, and to see that public morals are protected; and the rights of this party should never be forgotten by the court.

The only remaining questions are those connected with the allowance of *ad interim* alimony and costs, embracing counsel fees. The *ad interim* alimony, and the amount necessary to meet the expenses of suit in cases of this character, are given, not as of strict right in the wife, but it is a matter for the sound discretion of the court. Sir John Nicholl, in speaking of allotment of alimony pending suit, says: "It is in the discretion of the court, and that discretion is to be formed from an equitable view of all the circumstances of the case. I must look at the complexion of the case." This is the remark of the "High Court of Delegates" upon an appeal from the consistory court involving this precise question. 3 Phillimore, 394. See also 25 N. Y'k, 514; 2 Kent's Com., 98; 2 Paige, 115; 2 Barb. Ch'y, 146; 1 Paige, 274; 1 Barb., 430; 3 John. Ch'y, 519; 3 Ed. Ch'y, 387; 1 John. Ch'y, 108; 19 Ga., 265. The wife, having just ground for her action, is often without the means to maintain her suit. Without the favorable exercise of this discretion, she would be denied justice, and there are many cases in which this allowance should be made; indeed, the general rule is to allow it upon motion or petition at the institution of the suit.

What effect, if any, the 10th section of our statute has when the application is thus made, in a case where the divorce is sought upon the ground of extreme cruelty, I do not determine, as that is not the case before the court.

In Sheldon vs. Pendleton, 18 Conn., 407, the court say: "When the wife is respondent, and defends herself against the application of her husband, the practice is uniform to order him to provide, in case of her inability, funds for her defense; but we have never known such aid to be furnished her when she was the prosecuting party." While it is not my purpose to

pass upon the correctness of this view, or to determine the effect of our statute, or to express any opinion as to the proper doctrine on this subject, yet I do not doubt the rule as applicable to the facts of the present case.

This court has felt constrained to reverse the decree of divorce in this case. The basis of the decree is entirely improper, being the consent of the parties. It is not sustained by the proofs; and viewed in the most favorable light, the record discloses a state of facts which falls very far short of justifying the decree. In this case the wife fails in her suit. These expenses were not allowed in the court below *until the final decree in the case.* The allowance for counsel fees is made in the final decree, from which this appeal is prosecuted, and the rule applicable to cases where the wife has brought her case to a hearing, and has failed, before an allowance for these expenses is made, must be applied. In such cases, independent of the statute, or any question under it, the rule is, that the husband is not liable for these costs. Keats vs. Keats, 1 Swab. & T., 334, 358; 2 Bish. Mar. & Div., §388, 416. At the time that this order was made, it had been established by the proof of the wife, who filed the bill, that she had no ground for divorce.

The next question raised by the record is the allotment of alimony *pendente lite.* Without deciding what may be the effect of our statute upon the subject of an allowance during the pendency of the suit, for the support of the wife, *when the order is made before final decree,* the general rule where alimony is allowed as an incident to the suit, may be stated to be that where the wife, upon filing a bill for divorce, applies for an allowance *pendente lite,* and states a case requiring relief as to support, and the fact of marriage or cohabitation as man and wife is admitted or proved, the court may, in the exercise of a sound judicial discretion, pass an order for alimony *pendente lite* where the wife has not sufficient separate property, and the husband has faculties or ability, and where her case as stated would entitle her to a final decree. There are, however, excep-

tional rulings, and indeed, it being to some extent matter of discretion, the action of courts has not been very harmonious.

In New Jersey, after petition for divorce on the ground of abuse and ill-treatment, a motion to allow maintenance *pendente lite* was refused against a party who had been declared a lunatic by the court, though the acts of abuse and ill-treatment transpired when he was not a lunatic, upon the ground that the order implies a default and neglect of a moral obligation on the part of defendant.

In New York, on a bill by a husband for a divorce, the wife will not be allowed alimony, nor will the court, on her motion, order her husband to advance money to enable her to defend the suit, until she has by her answer disclosed the nature of her defense. 3 John. Ch'y, 519. So the application of the wife for an allowance to enable her to make her defense and for alimony will not be granted, unless she denies in her petition, on oath, the truth of the charge of adultery, or shows therein some valid defense to the husband's suit. 2 Paige, 621.

It has been held in North Carolina, Vermont, and Massachusetts, that this allowance *pendente lite* cannot be made if there is a statute regulating the subject of divorce, and it is silent. 2 Dev. & Batt., 377; 10 Verm., 505; 19 Verm., 603; 2 Gray, 285; 8 Cush., 405. But see contra, 10 Ga., 477.

I have been unable to find any precedent where, under the circumstances disclosed in this record, the wife has been given this allowance upon final decree. This bill is brought by the wife upon the ground of cruelty. The bill, except in so far as it sets up the general conclusion of extreme cruelty, fails entirely to make out a case. The acts specified do not constitute extreme cruelty. This is necessary. 2 Paige, 112, 113; 4 Wis., 135; 27 Maine, 563.

The husband, in his answer, denies being guilty of any such conduct as charged in the bill. Upon the bill thus defective, and an answer in full denial, a decree of divorce is made by consent. The wife, who was examined as a witness, states

that while she was living with the defendant as his wife, she was annoyed *by information of others,* (which she afterwards says was the information of one person,) that she would be put out of the house by defendant's daughters during his absence; that there never was any other unpleasantness except this; and that the children demeaned themselves toward her a part of the time the same as if they were her own children; and she expressly states that [the "*only and sole*" cause of her leaving was information brought to her by some one, (whose name she declines to disclose under advice of counsel,) that one of the daughters of defendant had stated that she intended to make her leave the house; and this information she states she did not convey to her husband. Before she left she says that defendant sat down on the bed with her, and "begged" her not to leave; that for fifteen minutes he used his efforts to get her to remain, and that he stated to her that she had better think more about the matter.

The husband, who was examined as a witness, states: "She seemed to be dissatisfied several days before she left, and I then tried to find out what was the matter with her; asked her if it was anything I had done to her. She said No, there was nothing. I then asked her if there was anything I could do to satisfy her. She said No. I then persuaded her with all the language that I was master of from that time up to the time she left. I told her it was disgraceful and shameful for her to act so; but she said she would go if she lived, if she had to walk."

In such a case as this, where neither from her bill, the answer of defendant, or her own statement as a witness there is anything approximating unkindness on the part of the husband, much less cruelty, I am clearly of the opinion that the court should not have awarded alimony, either *pendente lite* or permanent upon the hearing when the whole case was disclosed.

As to allowance and alimony, the statute, 10 sec., par. 3, Thomp. Dig., 223, provides that when a divorce is decreed for the cause of extreme cruelty, the court may in every case take

such order touching the maintenance and alimony of the wife, *or any allowance to be made to her, and, if any,* the security to be given for the same, as from the circumstances of the parties *and nature of the case* may be fit, equitable, and just.

Whatever may be the rule where the wife's bill discloses merits, and her facts make a case which, if true, will entitle her to relief, and she applies before final decree, and when for the purposes of justice this subsistence is necessary, it cannot well apply to this case, where she has no such bill and no proof, and postpones her application for the order to a period when in point of fact she does not and cannot need subsistence during the suit, for the decree which awards it is the last act. 2 Bish., M. & D., §425, 388, 416, 417.

In the case in 3 Phillimore, 394, the precise question under consideration was the allotment of alimony *pendente lite,* where it was two years before the wife had applied for it in the consistory court. It was a case of great outrage and wrong upon the wife. The "High Court of Delegates," upon an appeal from the consistory court, say, "Considering that the wife was two years before she applied for alimony, we shall be disposed not to carry the grant back, but shall make it merely prospective."

If the wife postpones this application until after decree of divorce for extreme cruelty, or the decree or order is made by the court after the decree of divorce, the court must follow the statute, for it then certainly does control its action, and unless the nature of the case justifies it, and it is fit, equitable, and just, no order granting maintenance or alimony, whether retrospective or prospective, should be made; and this, as I understand it, is the view of Justice Hart.

At the institution of this suit it is not conceivable that the parties cohabit. It is legally improper for the parties to live in matrimonial cohabitation. It is a legal presumption that the wife anterior to this time is able to obtain subsistence on the credit of her husband, and after the institution of such suit the presumption is that her ability to obtain subsistence on this

credit ceases; hence, unless aided, she may suffer wrong for the want of subsistence to prosecute it, and hence, where she is unable to provide for her own subsistence and the husband has the means of supporting her, and it is probable that she may succeed, it is a matter of course in the practice of some States to require him to contribute of those means to furnish her with the necessary clothing and sustenance.    2 Sandford, chap. 146, 147; Bish., M. & D., §406.

Where a wife, however, has sufficient property, this allowance is never made, because then the reason fails.

Under such circumstances as should properly enable a party to recover for necessaries furnished the wife during the pendency of the suit for divorce, the husband is liable at law.    5 B. & C., 375; 1 Sand., 483.    If the wife has furnished them herself, the court should not and cannot properly award them.    If some other person has furnished them in a case of this kind, as it appears from the record, he should be left to his action at law, where his rights, if he has any, may be determined.

The wife cannot disregard her marital obligations, abandon her husband against his protests, and after fully developing such a case, have at the hands of the chancellor a decree for separate maintenance during the pendency of such suit.    I do not understand that my associates differ with me in these views.