## ISAAC QUINTARD *vs.* EDWIN BISHOP.

The plaintiff in 1833 covenanted with the defendant that he and his heirs and assigns would keep open, as a public highway, a road sixteen feet wide, over his land, from a certain turnpike to a canal basin and landing place which the defendant was about to construct; also to keep open, as a public highway, certain other land near the basin, which was described in the instrument, which ground was to be kept open as a highway from the time the canal was put in navigable order for sloops of ordinary size, forever; provided that the boating business was continued on the canal, the plaintiff to have the right, if it was discontinued, to shut up the highway until it was resumed. The canal was immediately after constructed, running from Long Island Sound to the basin referred to, and the roads mentioned were opened by the plaintiff. In 1858 the plaintiff made a fence across the first described way, which the defendant removed, and the plaintiff sued him in trespass. At this time the boating business had wholly ceased upon the canal, it having been destroyed by the construction of a railroad bridge across the canal below the basin, for which injury the defendant had received compensation from the railroad company. A part of the basin had also been filled up and a new landing place made upon the part filled. A considerable trade in lumber was however kept up on the canal, and the basin continued to be used in connection with such trade. Held, 1. That the conditions in the instrument were applicable only to the second described way, and that the first was not affected by them. 2. That if the terms "landing place or basin" were to be considered, not as merely descriptive of the place at which the road was to terminate, but as designating the object of the road and limiting its continuance, yet the landing place or basin was to be considered, upon the facts, as still existing and in use. But whether the terms were not to be regarded as merely descriptive of the place: *Quere.* 3. That the defendant had a right to remove the obstruction and was not compelled to resort to an action for a breach of the covenant. 4. That it was not necessary that, at the time he removed the obstruction, he should have been passing upon the road for the purpose of going to the basin.

TRESPASS *qu. cl. fr.* The trespass alleged was the removal by the defendant of a fence erected by the plaintiff across certain land of which the plaintiff claimed the exclusive ownership, but which the defendant claimed to be highway. The case was tried to the court, on the general issue, with notice of justification.

The plaintiff, on the 3rd day of May, 1833, was the owner in fee of the premises, and on that day entered into the following covenant with regard to the same with Alfred Bishop, whose rights under the covenant had been conveyed to the

defendant. The land in question was that described in the covenant as the road to be kept open sixteen feet in width.

" Know all men by these presents, that I, Isaac Quintard, Jr., of the town of Stamford, in consideration of ten dollars, to me in hand paid by Alfred Bishop of New Jersey, do hereby bind myself, my heirs, executors, administrators and assigns, to keep open as public highway a road of sixteen feet in width, from the turnpike to a landing-place or basin which said Bishop is about to construct in my corner lot, adjoining Washington Block, the road to be left open east of the present tier of buildings which constitute said block, said block being situated in said Stamford, on the corner south-east of the Presbyterian meeting house ; also to keep open as public highway all ground belonging to me on said corner lot, west of the store now occupied by W. & R. Hoyt, and all ground west of a north and south parallel line with the front shed or stoop of said store, and which is north of an east and west line designated as a boundary line between said lot or corner, and land which I have agreed to convey by deed to said Bishop for the purpose of a canal basin, wharf, &c., said ground to be kept open by me as a highway from the time said canal and basin is put in navigable condition for sloops of ordinary size, forever ; provided that the boating business is continued on said canal ; and should it at any time be suspended for more than six months at any one time, I to have a right to shut up such highway until said business shall be resumed, and no longer ; but if said canal should not be in readiness for navigation within two years from the first of April, 1833, then this obligation to be null and void, otherwise to be in full force and effect. In witness of the foregoing, I hereunto set my hand and seal, this third day of May, 1833.

ISAAC QUINTARD, JR. [L. S.] "

The canal and basin were constructed immediately after, and the ways covenanted for in the above instrument were opened for public travel, and the premises continued to be freely used as public passways until 1848. During that year a railroad bridge was constructed across the canal a few rods below the basin. The effect of this bridge was greatly to

diminish the business of the canal, cutting off access to the basin of vessels with masts, and stopping the run of market boats to and from New York, thus putting an end to the business which was known at Stamford as the boating business. The defendant received from the railroad company about $7000 on account of damages to the canal caused by the bridge. Since 1848 the business of the canal above the bridge had been confined to the transportation of lumber, which business was still considerable, and was carried on in scows substantially as before the construction of the railroad bridge. In consequence of these changes, the defendant, in 1852 or 1853, filled up portions of the basin and canal, a landing place for lumber being made on a part of the canal so filled. These changes produced considerable change in the amount and character of travel over the *locus in quo*. Since 1853 loaded wagons had, with very few exceptions, taken another route ; empty wagons and foot passengers had continued to use the passage, but not as often as formerly. It however remained open as a passage-way and as a receptacle for rubbish, until the erection of the fence by the plaintiff, shortly before the bringing of this suit. Since 1853 the way had been mostly used in connection with business southerly of the original basin, and along a road upon that part of the basin now filled up.

For the purpose of showing the situation of the property and the relations of the parties, the plaintiff introduced evidence of another covenant executed by himself to Alfred Bishop a short time before the execution of the covenant before mentioned, and of a deed executed by him on the 2d day of October, 1833, in accordance with the covenant. The covenant was as follows :—

Whereas Alfred Bishop, of the county of Morris and state of New Jersey, contemplates digging a canal from some point on Black Creek, in the town of Stamford, in the state of Connecticut, to Abraham Davenport's dike lot, or into my corner lot near the Presbyterian meeting house in said town : now I hereby agree and bind myself, my heirs, executors, administrators and assigns, to convey to him by deed between three-fourths of an acre and an acre of said corner lot, known as the

Washington block, including that piece of ground which has this day been staked out by Edwin Bishop, and the stakes by him driven as the boundaries of said lot intended to be conveyed, whenever he, the said Bishop, shall have commenced digging, and half completed a basin in said lot, for the purpose of the head of such canal; and if said Bishop should not complete said canal and basin within two years from the first day of April next, then this obligation to be void, and any work that may have been done by him in preparing such basin to be forfeited to me, and he to pay me whatever sum may be estimated as damage by three persons chosen, one by each of the trustees. It is understood that the benefit I shall derive to my other adjoining property from the above improvement is the consideration of the above obligation, and is accepted by me as such, and I hereby authorize him to take possession of the said premises for the purpose of excavating as soon as he may think best, without any hinderance or molestation by me.

In witness of the above, I hereunto set my hand and seal, this 11th day of February, 1833.

ISAAC QUINTARD, JR. [L. S.]

Upon these facts the plaintiff claimed that whatever rights to the use of the *locus in quo* were conferred by the first mentioned instrument, were qualified and limited to the time during which the basin and landing-place should continue as originally located, and that the change of their location by the defendant terminated his right in the passage-way; and the plaintiff further claimed that upon these facts the canal, basin and landing-place, by the acts of the defendant, had substantially ceased to exist for any of the purposes contemplated by the parties, and that the defendant's rights in the premises were so qualified as to terminate with such cesser. The plaintiff further claimed that if the defendant had any rights under the instrument and upon the facts, they were rights of action to be vindicated by a suit on the covenant, and not to be regarded and enforced as existing rights of way in the land. The court decided against all these claims of the plaintiff, and rendered judgment for the defendant; and the plaintiff moved for a new trial.

*Hawley* and *Ferris*, in support of the motion.

The object of the bond was to provide a way to the basin and landing place, and such a basin and landing place as was contemplated, so long as they continued there, and no longer. It had no reference to the place where they were to be constructed, irrespectively of the construction and continuance of a basin and landing place there. Had Bishop omitted to construct them there, the plaintiff would not have been bound to open a way at all, and having constructed them, he, being the entire owner of the canal, could discontinue them at his pleasure. Each party had his own benefit in view. The plaintiff's adjoining property was to be benefited by the basin and canal, and Bishop by access to them, and the plaintiff could be required to keep the way open no longer than while he enjoyed the benefit of the consideration of his covenant. But aside from this consideration, when the basin and landing place were discontinued, or ceased to be what were contemplated, the obligation to keep the way open ceased. The covenant rested on that condition. Co. Litt., 204 *a.* It was in this respect like a base or qualified fee, as a grant to " A and others, inhabitants of Dale." 2 Bla., 112. Cruise, book 1, § 82. The bond clearly shows that the basin and landing place were intended for, and to be adapted to and used for the boating business, as defined by the usage of that place and by the finding of the court. And the finding shows that that has been entirely and forever discontinued and abandoned. But, on any construction of the covenant the plaintiff's obligation to keep the way open is at an end. It matters not that the basin is not entirely filled up. It is no longer the basin contemplated. It is absurd to call the place left, the basin and landing place in reference to which plaintiff made his covenant. A way to them is no longer necessary.

The way is not highway. The covenant does not profess to make it one. It is a covenant to keep a road open as highway—that is, like a highway and in the same manner as a highway. There is no dedication to the public. The covenant is not to the public, nor to any representative of the public, but to a private individual, and in relation to his property.

---

---

Besides, if it were highway while the basin and landing place continued, it ceased to be such on their discontinuance.

But, independently of all these considerations, the defendant had no right to demolish the fence erected there by the plaintiff. His only remedy (if he is entitled to any) is upon the covenant.

*Dutton* and *Minor,* contra.

The covenant given by the plaintiff to Alfred Bishop, on which the defendant relies, is a continuing covenant to keep open forever the *locus in quo* as a public highway. The covenant has reference to things of a permanent character, its object being to secure a public highway between certain termini, one being a turnpike, the other a landing place or basin. The covenantor uses language strongly importing permanency; he binds himself, his heirs, executors, administrators and assigns, to keep open as public highway, a road of sixteen feet in width ; and no where in the covenant does he undertake to limit the continuance of the public highway as to time. If the covenantor has left his intention in doubt, the construction should be unfavorable to him.

In any event the public highway on the *locus in quo* is to be kept open so long as its termini remain, and the case finds that both turnpike and canal still exist. *Bishop* v. *Quintard,* 18 Conn., 396.

The obstruction of the highway by the plaintiff was a nuisance which the defendant had the right to abate ; he need not look to the covenant for his remedy. The plaintiff is estopped to deny that the *locus in quo* is a public highway so far as Alfred Bishop and his assigns are concerned.

ELLSWORTH, J. We think that Alfred Bishop, under whose original right the defendant justifies, obtained from Isaac Quintard, by his deed of the 3d of May, 1833, the right of way now in controversy. The instrument was duly executed, and it was intended by the parties as therein expressed that a public right of way should be vested in said Bishop. *Bishop* v. *Quintard,* 18 Conn., 396.

Another highway is mentioned in the same instrument as granted to said Bishop, to wit, one on the west side of the building then occupied by W. & R. Hoyt. To this latter way there is annexed a proviso, that the right of way shall continue only so long as the boating business (so called) shall be continued on a certain canal, then in the contemplation of the parties, which boating business it is found has since ceased; and thereby that highway has, so far as we may judge from any thing before us, ceased.

It was claimed on the argument, that the first named highway is subject to the same limitation as the second, and that that highway had likewise ceased. If so, then it is clear there was no defense to the plaintiff's action; and he should have recovered of the defendant for the trespass complained of. But we do not think this claim is correct. We believe that the better construction of the deed confines the limitation to the second highway, though were this point made for the first time, it might possibly admit of a doubt. Our view too is strengthened by the rule of law, that in a case of ambiguity of construction, the construction is to be most in favor of the grantee and against the grantor. But the question is no longer open for discussion; it was fully decided in the case of *Bishop* v. *Quintard*, 18 Conn., 403.

Entertaining then this view of the instrument, we inquire if there is any other limitation to the existing highway. To some of us it seems pretty clear that there is not any; that the grantor has given and intended to give to his grantee an absolute highway of sixteen feet in width from the " turnpike" to a certain landing place, which two termini were then well known and understood by the parties. This might be fairly argued from the fact that the grantor by annexing a limitation to the second highway showed that his attention was at the time called to the question of a limitation, but did not affix any to this highway, except as hereinafter mentioned. Be this however as it may, we are all of opinion that there is no other limitation to the first highway than the continuance of the use of the canal and basin mentioned in the deed. Now such canal and basin are found to be *continued*, and are in *use*,

though not to the same extent as formerly. It is found to be *considerably* used. The court say the "lumber business on the canal is still considerable, and is carried on in scows substantially as before." So that if we agree to this particular limitation as a qualification of the right of way, it is one that can have no effect upon our present decision. We must therefore hold that the highway is still there.

We next inquire if the defendant had a right to have the highway kept open—that is, to have it kept in a condition to be used with freedom, or is he a trespasser for removing an obstruction placed entirely across it and stopping all travel over it. We can not see why he has not this right as fully as in any case of an obstructed highway. It was a nuisance to all who traveled over this road, and we see no reason why the defendant might not remove it at once, that all persons might see and know that the way was open and free for the uses for which it was given. We think he might do this, and was not put to the necessity of an action for breach of covenant.

It is said that the defendant should have resorted to this last remedy rather than have cleared the highway of the existing obstruction; but, as we have suggested, if the defendant had a clear right of way, he might insist that it should be in a condition to be used; and as the fence was removed avowedly for this purpose, he did no more than the law justified him in doing.

Nor in our judgment was it necessary for him to prove that at the very time he removed the fence he was using the highway to go to or from the canal. We repeat, he was to have by his deed an open, unobstructed highway between the termini mentioned, while it continued. And further, had this last objection been made on the trial, it might have been shown how this fact really was, if deemed of any importance. We presume it was not so considered, nor does it appear to us that it could properly be.

We therefore do not advise a new trial.

In this opinion the other judges concurred.

New trial not advised.