ALVIN A. DORITY *vs.* MARLIN DUNNING.

Penobscot. Opinion September 28, 1886.

*Waters. Aqueduct. Easement. Prescription. Extinguishment of Easements Damages.*

An easement originating from water supplied by a spring not situated upon land belonging to the grantor of the plaintiff's premises, will not pass as an appurtenance to the estate conveyed, unless it has become attached to the same.

But where such easement, although not originally belonging to an estate, has become appurtenant to it, either by express or implied grant, or by prescription, a conveyance of that estate will carry with it such easement, whether mentioned in the deed or not, although it may not be necessary to the enjoyment of the estate by the grantee.

There may be such an adverse and exclusive use of water flowing through an aqueduct, and for such a period of time, as may well be considered presumptive evidence of a grant.

Such right may thereby be acquired by prescription.

The right to draw water from a spring and to have pipes laid in the soil of another, and for that purpose to enter thereon, repair and renew the same, constitutes an interest in the realty, assignable, descendible and devisable.

Easements growing out of it may be acquired by grant or prescription, and thus become the objects of title in others.

An easement will become extinguished by unity of title and possession of the dominant and servient estates in the same person by the same right.

But in order that the unity of title shall operate to extinguish an existing easement, the ownership of the two estates must be coextensive, equal in validity, quality, and all other circumstances of right.

If one is held in severalty and the other only as to a fractional part thereof by the same person, there will be no extinguishment of such easement.

The rule of damages in actions for the wrongful diversion of water stated.

ON report. The opinion states the case.

*Davis and Bailey*, for the plaintiff, cited: *Watkins* v. *Peck*, 13 N. H. 360; *Hollenbeck* v. *McDonald*, 112 Mass. 250; *Goodrich* v. *Burbank*, 12 Allen, 459; *Philbrick* v. *Ewing*, 97 Mass. 134; *Ivimey* v. *Stocker*, L. R. 1 Ch. App. 396;

*Stanwood* v. *Kimball*, 13 Met. 533 ; *Arbuckle* v. *Ward*, 29 Vt. 43 ; *Reed* v. *West*, 16 Gray, 284 ; *Atlanta Mills* v. *Mason*, 120 Mass. 251 ; *Tucker* v. *Jewett*, 11 Conn. 321 ; *Thomas* v. *Thomas*, 2 C. M. & R. 34 ; *Ritger* v. *Parker*, 8 Cush. 145 ; *Grant* v. *Chase*, 17 Mass. 447 ; *Hazard* v. *Robinson*, 3 Mason, 278 ; Angell, Watercourses, (6th ed.) § 191 *et seq.* ; *Wallace* v. *Fletcher*, 10 Foster, 453 ; *Coolidge* v. *Hager*, 43 Vt. 9 ; *Vermont Cent. R. Co.* v. *Hills*, 23 Vt. 685 ; *McLellan* v. *Jenness*, 43 Vt. 183.

Full costs should be allowed in this case. *Williams* v. *Veazie*, 8 Maine, 106 ; *Sutherland* v. *Jackson*, 32 Maine, 80.

*John Varney*, for defendant.

The testimony of all the witnesses show that whatever participation in the benefits of the main aqueducts have been enjoyed by the Truxton Dority estate were permitted under contract and agreement, and paid for by rental, in contribution of money, and services towards its repair. Such "user" can, in no sense, it is submitted, be regarded as adverse, and consequently not the basis of prescriptive title. If the arrangement was by parole, it would, at most, be but a revocable license. The authorities sustain this view, and it is believed that the case *Watkins* v. *Peck*, 13 N. H. 360, is not in conflict with it. Wash. on Easements, 2d ed. pp. 106, 124, 125, 380.

An undivided, common interest, can not be servient, while the co-interests in the same estate are not subject to the same service. Such a rule would seem to be the only one admitting of practical application. Wash. on Easements, 2d ed. p. 150.

Attention is again called to the language in the deed from the Pattens to plaintiff, as to the branch water pipes. In the case on plaintiff's brief on this point, *Philbrick* v. *Ewing*, 97 Mass. 134, it was held that, although the branch pipe passed, the right to the water from the main aqueduct did not, for the reason that the owner of the branch pipes did not own the main aqueduct. He was, however, a stockholder in the company which did own the main aqueduct, and as such, had the flow of water from the main aqueduct into his branch pipes.

FOSTER, J.  This is an action on the case for diverting the water running in an aqueduct to plaintiff's house and stable. From the evidence reported, the following facts, essential to a correct understanding of the case, affirmatively appear.

In 1836, Daniel Herrick took a lease of a certain spring with the right to conduct water therefrom through the lessor's land for the term of nine hundred and ninety-nine years.  Having soon after obtained the right to lay pipes through adjoining lands, the lessee immediately constructed an aqueduct from said spring to Charleston Corner, a mile distant, more or less.  The several places taking water from this aqueduct were accustomed to pay an annual water rent, except the Jacob Dority place, the Isaac Dunning place, now owned by the defendant, and the Truxton Dority place, now owned by the plaintiff.  These were the first three places lying along the line of the aqueduct, and in the order named; and it is claimed by the plaintiff that these three received the water under perpetual rights derived by grant from said Herrick, or by prescription.  It appears that the parties occupying these places, and their successors, have always borne their proportional part of the expense in maintaining the aqueduct, and that the water has run to their houses and barns by means of branch pipes in the same manner for more than forty-five years.  After leaving the defendant's premises the aqueduct passes to the plaintiff's land in the rear of his dwelling house, and there the water has been accustomed to enter what is termed a main cistern, and from that to run in branch pipes to his house and stable.  This continued till the fall of 1881, when it is alleged that the defendant diverted the water, thereby preventing it from flowing to the premises of the plaintiff, and for such diversion this action is brought.

Daniel Herrick died in 1864, and his son, as administrator on his estate, in 1869 sold the rights of the deceased in this aqueduct to the defendant, and one David H. Patten, who then lived where the plaintiff now lives.  Patten died, and by will left all his property to his wife and daughter, who in 1879 conveyed to the plaintiff the premises where he now lives, by warranty deed, adding to the description this clause—" also all the branch water

pipes running from the main cistern to the house and stable."

A short time after this conveyance they conveyed their undivided half of the aqueduct, derived from the administrator of Daniel Herrick's estate, to the defendant, who since that conveyance has assumed the absolute right to control the water in the aqueduct to the entire exclusion of the plaintiff, and has completely diverted the same from his premises.

The plaintiff's claim is based upon the ground that this water right was an easement legally appurtenant to his estate and passed to him at the time he received his conveyance from the Pattens.

To determine the correctness of this position we must first ascertain whether the easement was one that had ripened into a legal right and had become legally attached to the premises conveyed. For this easement, originating from water supplied by a spring not situated upon land belonging to the grantor of the plaintiff's premises, would not pass as an appurtenance to the estate conveyed unless it had thus become attached to the same. *Spaulding* v. *Abbot*, 55 N. H. 423.

But when an easement, although not originally belonging to an estate, has become appurtenant to it, either by express or implied grant, or by prescription which presupposes a grant, a conveyance of that estate will carry with it such easement whether mentioned in the deed or not, although it may not be necessary to the enjoyment of the estate by the grantee. 2 Wash. R. P. *28. *Kent* v. *Waite*, 10 Pick. 138. Hence if Patten in his lifetime, aside from any interest conveyed by Herrick's administrator, was the owner of this easement as annexed to this particular estate, it passed with the estate to his wife and daughter, and from them would have passed to this plaintiff as appurtenant to the premises conveyed, even if no mention had been made of it in their deed to him.

And from all the evidence in the case, any extended summary of which would hardly be deemed proper in an opinion, we can arrive at no other conclusion than that this easement had become appurtenant to the estate long before it came into the hands of Patten. The testimony of Place shows that in 1845, after it had

been in operation about nine years, he hired the aqueduct of Herrick for four or five years, and has always known it and had charge of the repairs upon it till within a few years; that during the time he hired it, he leased the use of the main pipe to those parties along the line of it and who were accommodated by it, except Truxton Dority, who then lived on the place now owned by the plaintiff, Isaac Dunning, then living where the defendant now lives, and a party on the Jacob Dority place, "reserving to these individuals their rights which had been sold to them; and they were under obligations to do their proportion towards the repairs on the main pipe if any repairs were needed." He also testifies that Truxton Dority paid somewhere about $100.00 for his right, and that this was one of the places reserved by Mr. Herrick from the payment of rent. This testimony is corroborated by that of Daniel Herrick's son and administrator, who worked upon the aqueduct when a boy and remembers the fact of these three parties owning their water rights. Moreover, the testimony of E. S. Higgins, formerly an owner of the property now held by the plaintiff, shows that as long ago as 1860 he had a separate deed, in connection with his title to the premises, of the water right belonging to the place, made out from what he terms the old Daniel Herrick deed.

As tending to corroborate these facts it will be found upon examination that the evidence is clear and uncontradicted, that for more than forty-five years the plaintiff and those under whom he claims, have enjoyed the use of the water flowing substantially in the same manner to the house and stable upon the premises. During all this time it has passed through the premises formerly known as the Isaac Dunning place, and now held by the defendant. During all these forty-five years, the right of the plaintiff and of his predecessors in title thus to take and use the water, and to have it flow to them, has never been questioned or contested by any one till this controversy arose.

Even if there was not evidence of an express grant, these facts, showing an adverse and exclusive use of water during so long a period, might well be considered presumptive evidence of

a grant.    *Watkins* v. *Peck*, 13 N. H. 370 ;    *Wallace* v. *Fletcher*, 30 N. H. 452 ; *Ashley* v. *Ashley*, 4 Gray, 200 ; *White* v. *Chapin*, 12 Allen, 519 ; *Jewett* v. *Hussey*, 70 Maine, 437 ; *Murchie* v. *Gates*, 78 Maine, 304–5. "And this is as true," says PARKER, C. J., in *Watkins* v. *Peck*, supra, "in relation to water flowing through an aqueduct, for use at a house by the occupants, as it is in relation to the water of a river used for propelling machinery."

Under circumstances like these, the language of the court in *Tinkham* v. *Arnold*, 3 Maine, 123, may be considered as peculiarly appropriate. "The law," says MELLEN, C. J., in that case, "gives a natural construction to the conduct of the parties ; and, after a long succession of years, presumes that the person enjoying the easement, having no right to enjoy it unless under the grant of the true owner, had such a grant; and that in consequence of it he had never been molested in his enjoyment."

What was the effect of the deed from the administrator of Daniel Herrick to the defendant and David H. Patten, and what was thereby conveyed to them ?

The interest which Daniel Herrick had in the aqueduct was not only the right to draw water from a particular spring, but to have pipes laid in the soil of another, and for that purpose to enter thereon, repair and renew such pipes.    This interest was more than an easement in gross ; it was an interest in the realty, assignable, descendible and devisable.    It was such an interest as was capable of being assigned as to a part or in gross. Easements growing out of it might be acquired by grant or otherwise, and thus become the objects of title in others. *Amidon* v. *Harris*, 113 Mass. 64.    Thus the right to take water from this aqueduct was an easement, and so far as this right had not by grant or otherwise passed from the owner to any particular person or persons, or become annexed to any particular estate or estates, the same was subject to assignment by him.    *Goodrich* v. *Burbank*, 12 Allen, 459 ; *Amidon* v. *Harris*, supra.    But whatever easements or rights had been acquired by grant or otherwise from the owner of the aqueduct,

would enure to the benefit of the persons or estates of those who· had thus acquired them, and would not, therefore, pass by the· administrator's deed. Before the defendant and David H.. Patten received the deed of this aqueduct from the administrator, Patten was the owner of the premises which were afterwards conveyed to this plaintiff. Annexed to these premises and appurtenant thereto was this easement or right to the water from the aqueduct in question. To this easement thus annexed and belonging to these premises, the defendant could certainly claim. no right or title by virtue of the administrator's deed. If a like· easement at that time existed in reference to the defendant's promises, neither could Patten have claimed any right or title thereto under that deed for the same reason.

But whatever title or interest the deceased Herrick had in the· aqueduct passed to them, and of this they were owners in common.

Assuming that the court should find that an easement existed, such as we have mentioned, and had once become appurtenant· to the premises now owned by the plaintiff, it is contended in defence that such easement became extinguished by unity of title to the dominant and servient estates in the same person — by David H. Patten owning the premises to which the easement had become annexed, and by taking to himself, by the administrator's deed, a half interest undivided in the main aqueduct.

That an easement will become extinguished by unity of title and possession of the dominant and servient estates in the same person by the same right, is a principle of law too general and elementary to be questioned. But this principle, like many others, is subject to qualifications. In order that unity of title to the two estates should operate to extinguish an existing easement, the ownership of the two estates should be coextensive, equal in validity, quality, and all other circumstances of right. If one is held in severalty and the other only as to a fractional part thereof by the same person, there will be no extinguishment of such easement. *Ritger* v. *Parker*, 8 Cush. 147 ; 2 Wash. R. P. * 85. Thus it was held by ABINGER, C. B., in the English court of Exchequer, in *Thomas* v. *Thomas*, 2 Cr. M. &

R. 34, in which case one estate was held in fee and the other for a term of five hundred years, that unity of possession did not extinguish the easement, but only suspended it during that unity of possession; and upon parting with the premises to different parties, the right revived.

In the application of these principles to the facts in the case at bar, we find that while Patten had an estate in fee in the premises to which the easement was annexed, his interest in the aqueduct derived from the administrator's deed, was but a chattel interest, not only fractional in quantity, but limited in its duration to the term of nine hundred and ninety-nine years. *Gay, Petitioner*, 5 Mass. 419; *Chapman* v. *Gray*, 15 Mass. 445; *Brewster* v. *Hill*, 1 N. H. 350; *Hollenbeck* v. *McDonald*, 112 Mass. 249; Bouvier's Law Dict. Title, "Chattel Interest," "Estate for years."

There was, therefore, no such unity of title and possession as would extinguish the easement in the premises while held by David H. Patten, and consequently they passed by devise to his wife and daughter, the plaintiff's grantors, with the easement still subsisting and appurtenant thereto.

They also took the one-half interest in the main aqueduct which Patten had acquired in his lifetime by the administrator's deed. While thus holding the legal title to the premises with the easement in the use of the water running to them as part and parcel thereof; while also holding the half interest in the aqueduct, they conveyed to the plaintiff, adding to the description of the premises this clause—"also all the branch water pipes running from the main cistern to the house and stable."

This conveyance to the plaintiff being made and recorded prior to the conveyance from them to the defendant of their interest in the main aqueduct, may be properly held to convey to the plaintiff whatever might be fairly said to pass by the terms of the deed, and which they owned at the time of the conveyance. Had the clause in relation to the branch water pipes not been inserted in the deed, the easement relative to the use of water being one actually belonging to the estate conveyed, would have passed by implication. *Philbrook* v. *Ewing*, 97 Mass. 134.

With that clause added, was it the intention that only the branch water pipes themselvess should be conveyed? Or was it the intention, as well as the legal effect, that not only the branch water pipes, but also the easement in the use of the water passing through them upon the grantors' premises and which had become a legal appurtenance to the estate, and then in use by them, should also be conveyed? We are inclined to the latter view. It is not denied that the branch pipes would have passed without any mention thereof in the deed. Of what practical use, then, were the pipes six feet below the surface of the earth without the right to the water passing through them? It is an ancient maxim that when a person grants a thing, he is supposed also tacitly to grant such means of his own as are necessary thereby to attain the thing granted. Broom, Legal Max. * 426 ; Shep. Touch. 89 ; *Stanwood* v. *Kimball*, 13 Met. 533.

Laying out of the case all oral testimony in relation to what was intended to be conveyed, and looking at the deed in reference to its terms, the subject matter, and the circumstances surrounding the transaction, we feel satisfied that not only was it the legal effect of the deed, but also the intention of the grantors, to convey certain premises with the branch water pipes then in the soil and in use upon the granted premises, as in the case of *Coolidge* v. *Hager*, 43 Vt. 9 ; and that the defendant by his deed from the same parties, which was executed shortly afterwards, received a distinct property from that which had been conveyed to the plaintiff, being the same undivided half interest in the main aqueduct which years before had been deeded to Patten by the administrator of Daniel Herrick.

We have examined at some length the principal grounds upon which both parties base their claims. It is . unnecessary to consider any others, inasmuch as we are of the opinion that the plaintiff is entitled to prevail.

The only remaining question is that in relation to damages. The acts of the defendant in diverting the flow of water to the plaintiff's premises was a misfeasance such as would render him liable in this action. It was in the nature of a continuing nuisance. The evidence in relation to these acts indicate that

the damage is temporary rather than of permanent injury to the realty. They do not appear to be of such permanent character as would seem to warrant us in assuming that they are to continue forever in the future, and thereby justify the assessment of damages accordingly. The cost of restoring the water to its accustomed channel could be but very slight, and it lies in the power of the defendant thus to restore it, thereby avoiding successive suits. In this case we adopt the rule laid down by this court in *C. & O. Canal Corp.* v. *Hitchings,* 65 Maine, 140, and the plaintiff will recover such damages only in this action as he had sustained at the time it was commenced. *Thompson* v. *Gibson,* 7 M. & W. 456; *Battishill* v. *Reed,* 18 C. B. 716; *Bare* v. *Hoffman,* 79 Penn. St. 71.

> *Judgment for the plaintiff for forty dollars damages.*

PETERS, C. J., DANFORTH, VIRGIN, EMERY and HASKELL, JJ., concurred.