# MARY B. BLANCHARD *vs.* J. IRVING MAXSON

Second Judicial District, Norwich, April Term, 1911.
HALL, C. J., PRENTICE, THAYER, RORABACK and WHEELER, Js.

A right of way will never be presumed to be personal when it can fairly be construed to be appurtenant to land.

The question whether a right of way is personal or appurtenant is to be determined from the intent of the parties as gathered from the language expressive of it, when read in the light of surrounding circumstances. Among the considerations affecting the decision of that question are the necessities which the passway will satisfy, or the benefits it will confer in the enjoyment of the property by its owner.

In 1851 the owners of adjoining lots of land two hundred and fifty feet deep, which extended from a highway on the front to a river in the rear, mutually set apart by deed six feet on either side of the boundary line between their respective lots as a lane or passway for their use and benefit and that of their heirs and assigns forever. *Held* that easements in favor of, and as appurtenant to, the adjoining lands were thereby created, which passed with such lands to their subsequent successive owners.

The word "appurtenances" in a deed is apt and sufficient to pass an easement appurtenant to the premises therein conveyed, although such easement may not be otherwise described.

Whether such word or its equivalent is necessary to pass a right of way appurtenant to land conveyed, *quære.*

A right of way appurtenant may be extinguished by the union in the same person of a title in fee to both the dominant and servient estates; but such union of titles must appear from the record, otherwise there is no basis for the application of that principle by this court on appeal.

There is no presumption that the grantee of land bounded by a lane or private right of way takes title to the middle of it.

The owner of land to which an existing right of way is appurtenant is entitled to keep the way free from obstructions, although he may not own the fee to any part of the land within the limits of the way. Accordingly he may remove a fence placed thereon which materially interferes with his reasonable enjoyment of the easement, or renders that enjoyment less beneficial or convenient, although such fence may not entirely block the passway.

Argued April 27th—decided June 15th, 1911.

ACTION in the nature of trespass *qu. cl. fr.*, brought by appeal of the defendant from a judgment of a justice of the peace to the Court of Common Pleas in New London County and tried to the court, *Waller, J.;* facts found and judgment rendered for the defendant, and appeal by the plaintiff. *No error.*

In 1851 Thompson and Phoebe Wells, husband and wife, were the owners of a tract of land in the village of Pawcatuck, in the town of Stonington, which tract extended easterly from Mechanic Street to the Pawcatuck River, a distance of about two hundred and fifty feet. Joseph Anthony owned a similar tract south of and adjoining the former, and also extending from the street to the river. May 17th in that year these owners of these two contiguous tracts joined in the execution and delivery of an indenture, duly recorded, in which the parties, after reciting that Mr. and Mrs. Wells, on the one hand, and Anthony, on the other, were respectively the owners of a six-foot strip lying on either side of the boundary line between their respective properties, and making twelve feet in all, proceeded as follows: "Now therefore the parties to these presents have agreed and by these presents do confirm the same, that the aforesaid parcel of land shall be and forever remain a lane or pentway for the use and benefit of the aforesaid contracting parties unto each and all of them, their heirs and assigns forever. And the aforesaid contracting parties do by these presents each for himself and his heirs and assigns covenant with and confirm unto the other his heirs and assigns forever the said described parcels of land with the appurtenances,—to have and to hold the same according to the conditions of the aforesaid covenant."

August 8th, 1855, Anthony, the owner of the south tract, divided it into two parts by a line parallel with the street, and conveyed the front portion to Weeden

Clark, and the rear portion next to the river to Wells. In both these deeds the lane is made the northern boundary, and in both it is provided that the lane should remain open for the benefit of all parties interested therein. Wells having abandoned his wife in 1862, she, in 1868, obtained from the Superior Court a decree authorizing her to execute a conveyance of the land deeded to the husband by Anthony in 1855 as stated, it being described as bounded north on the lane. In 1886 Mrs. Wells gave to one Rogers a warranty deed of this land free from incumbrance, except that in the description the north bound is made the lands of Mrs. Thomas H. Sherman, who was the defendant's grantor. No mention of the lane was made in this instrument. August 1st, 1907, Rogers deeded to the plaintiff, bounding north on the lane. February 27th, 1909, Rogers gave another deed to the plaintiff, which bounded the property conveyed on the north by the defendant's land. This deed states that it was given to correct the former one, and that its purpose was to convey all that property which the grantor obtained by the deed from Mrs. Wells, already referred to. It also states that the land is conveyed "subject to any existing rights of travel, and all existing rights and privileges."

April 27th, 1867, Mrs. Wells conveyed to Mrs. Sherman the north tract, the south bound being described as the lane. July 1st, 1902, Mrs. Sherman conveyed the same property to the defendant. Each of these is a warranty deed, and grants the premises with the appurtenances thereof. They do not otherwise expressly purport to convey rights in the lane.

For more than twenty years there has been a dwelling-house on the plaintiff's land, and also a tenement on the defendant's land, still nearer to the river than that of the plaintiff. During all the time that the title to the

rear of the south tract was in Wells, the lane was kept open as a way in connection with the tracts of land on either side of it, and it has been kept open and with no gate, fence, or other obstruction upon it, except as hereinafter stated, and in use ever since, by the owners of said land, for the use and benefit of themselves, their tenants, and all persons having business with them. Twenty to twenty-five years ago there were fences on each side of the lane, separating it from the lands of the plaintiff and defendant. These disappeared more than fifteen years before the action was begun. Four or five years before the commencement of the action a tenant of the defendant, who occupied the house on the rear of the defendant's land near the river, placed a fence on the northerly boundary line of the lane, for the purpose of preventing persons from driving in upon the land. In the spring of 1909 the plaintiff erected a fence along the northerly side of the lane, parallel to and but a short distance south of its northerly line and extending from the river as far west as the west line of the plaintiff. This fence was wholly within the laneway, and so built as to prevent the defendant and his tenants from having access to the laneway from the defendant's land at any point easterly of the west end of the fence. This fence the defendant later removed, doing no other damage than was necessary to accomplish that result. This was the act of trespass for which the action was brought.

*Herbert W. Rathbun,* for the appellant (plaintiff).

*John W. Sweeney* of Westerly, Rhode Island, with whom was *George R. McKenna,* for the appellee (defendant).

PRENTICE, J. The questions presented by this appeal will, for the most part, be substantially resolved

by a determination of the character of the rights created by the indenture of 1851 in the twelve-foot strip mutually set apart by the parties from their respective ownership as a lane or pentway for their use and benefit and that of their heirs and assigns forever. Did they constitute easements personal to the parties, their heirs and assigns, and, therefore, easements in gross, or easements appurtenant to the adjoining land owned by the parties?

An easement of way will never be presumed to be personal when it can fairly be construed to be appurtenant to land. Washburn on Easements (3d Ed.) s. p. 161; Jones on Easements, § 47; *Bissell* v. *Grant,* 35 Conn. 288, 296; *Dennis* v. *Wilson,* 107 Mass. 591, 592; *Cadwalader* v. *Bailey,* 17 R. I. 495, 499, 23 Atl. 20. The question whether such an easement is personal, or is to be construed as appurtenant, "is to be determined from the intent of the parties as gathered by the language employed to express it, read in the light of the surrounding circumstances." *Chappell* v. *New York, N. H. & H. R. Co.,* 62 Conn. 195, 204, 24 Atl. 997; *Russell* v. *Heublein,* 66 Conn. 486, 491, 34 Atl. 486. Among these circumstances are the relation or want of relation of the rights of way to the estate of the person to whom the grant is made, or to the other estate of the person by whom they are reserved or excepted, and the necessity they will meet or the benefit they will contribute in the enjoyment of such estate by its owner. *Whittelsey* v. *Porter,* 82 Conn. 95, 102, 72 Atl. 593; *Dennis* v. *Wilson,* 107 Mass. 591, 592; *Winston* v. *Johnson,* 42 Minn. 398, 402, 45 N. W. 958.

Applying these principles to the construction of the instrument in question, it becomes too apparent to admit of doubt that it created easements in favor of the adjoining lands of the parties, and as appurtenant to such lands. The Wells were then the owners on the

north side of the lane as established, and to their land
so located the rights given by the instrument attached.
Being thus appurtenant to it, they have passed with
it to its subsequent successive owners, of whom the
last and present is the defendant, unless it has become
lost or been abandoned.  All the deeds in the chain
of title purport to convey the premises with their ap-
purtenances.  We have no occasion to inquire whether
such language was necessary to accomplish the result
indicated.  It is there, and it is enough that it is apt
and sufficient for the passage of an easement appur-
tenant, although it may not be otherwise described.
Jones on Easements, § 23; Minor & Wurts on Real
Property, § 87; *Smith* v. *Moodus Water Power Co.*,
35 Conn. 392, 401; *Post* v. *Smith*, ibid. 561, 562; *Peck* v.
*Loyd*, 38 id. 566, 570; *Kent* v. *Waite*, 10 Pick. (Mass.)
138, 141.

There are no facts upon which to predicate an aban-
donment of rights in the lane by the owners of the north
tract, or which tend to establish their loss by adverse
user, or in any other way than possibly through the
union of the dominant and servient estates in one owner-
ship and possession.  It is true, as the plaintiff claims,
that an easement of way may become extinguished by
the union in the same person of a title in fee to both the
dominant and servient estates, or by such union of
lesser estates of inheritance in both, which are coex-
tensive, equal in validity, quality and other circum-
stances of right.  Washburn on Easements (3d Ed.)
s. p. 518 *et seq.;* 2 Washburn on Real Property (6th Ed.)
§ 1316; *Atlanta Mills* v. *Mason*, 120 Mass. 244, 251;
*Dority* v. *Dunning*, 78 Me. 381, 387, 6 Atl. 6; *Thomas* v.
*Thomas*, 2 C. M. & R. 34, 41, note.  If one is held in
severalty and the other as to a fractional part thereof
by the same person, there will, however, be no extin-
guishment of the easement.  *Dority* v. *Dunning*, 78 Me.

381, 387, 6 Atl. 6; Minor & Wurts on Real Property, § 107.

But the record here shows no such union of titles. It shows that in 1855 the south or Anthony tract was divided, and the rear portion lying next to the river conveyed to Thompson Wells, the lane being designated as the northerly bound. It does not appear that Mrs. Wells ever had any title to the premises thus conveyed. The title to the north tract was at the time the indenture was executed in Mr. and Mrs. Wells. So far as appears, she never became its sole owner. The finding leaves it entirely uncertain what estates in this land Mr. and Mrs. Wells respectively had. The most plausible speculation from the known facts is, that the fee was in Mrs. Wells, who in 1867, after her abandonment by her husband, conveyed it to the defendant's grantor. Whether or not this speculation represents the fact, certain it is that the record furnishes no sufficient support for the proposition that Mr. Wells ever owned this land in fee. The plaintiff's contention, based upon a claimed union of titles in one person, that there was an extinguishment of the easement as to the defendant's land, in so far as it attached to the lane easterly of the west line of the plaintiff's land, thus encounters two obstacles, one of which, at least, cannot upon this record be overcome. In the first place, as the north bound in the deed to Wells in 1855 was the lane, there is no presumption that he took title to the middle of it, thus bringing him up to the line of the north tract. *Seery* v. *Waterbury*, 82 Conn. 567, 571, 74 Atl. 908. Even if he did, it remains that it is not shown that he or any other person was possessed of both the dominant and servient tenements at one time, within the requirements of the rule.

The fact that the defendant has never owned the fee to any part of the land covered by the lane does not

militate against his right to keep it free from obstructions. Any structure which could not properly be placed thereon, and which constituted an obstruction to his free and full use of the lane in his rightful enjoyment of the easement, would be removable by him as a nuisance. *Greist* v. *Amrhyn*, 80 Conn. 280, 290, 68 Atl. 521. The fact that the fence which he took down did not wholly prevent passage up and down the lane did not save it from being an unlawful obstruction. Erected as it was, without reasonable justification or purpose, it was a nuisance abatable by him, if it materially interfered with his reasonable enjoyment of the easement, or rendered that enjoyment less beneficial or convenient than before its erection. Wood on Nuisances, § 172; *Dickinson* v. *Whiting*, 141 Mass. 414, 6 N. E. 92.

We are asked to correct the finding in four particulars. In one instance we are asked to incorporate a finding of a conclusion of law from facts found, and an incorrect one, as we have had occasion to notice. Another request deals with a subject upon which there was conflicting evidence. The remaining two relate to immaterial matters. No correction is made.

There is no error.

In this opinion the other judges concurred.