**Fred FITANIDES and Marjorie Fitanides**

v.

**Lloyd A. HOLMAN and Louise E. Holman.**

Supreme Judicial Court of Maine.

Oct. 10, 1973.

Theophilus A. Fitanides, William P. Donahue, Biddeford, for plaintiffs.

Smith, Elliott & Wood, by George F. Wood, Saco, for defendants.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, and ARCHIBALD, JJ.

WEATHERBEE, Justice.

This case involves the existence of a right of way which the Plaintiffs contend runs across the Defendants' land. The Plaintiffs' property, containing approxi-

mately seventeen acres, is located in Saco, Maine, on the southeasterly side of U.S. Route 1, and is described in the deed to Plaintiffs recorded in York County Registry of Deeds.[1]

It is a five-sided parcel and its boundaries can be outlined roughly in the following manner:

Neither the easterly nor the long southerly boundaries are of interest here. The short northerly boundary is the highway. The short westerly boundary is a continuation of the westerly line of the Defendants' lot (which lies between the highway and the westerly portion of the Defendants' parcel[2]). The fifth—the northwesterly— boundary runs diagonally from the Plaintiffs' northwesterly (the Defendants' southwesterly) corner along the Defendants' southerly line and that of another parcel to the highway where it joins the Plaintiffs' northerly line.

It is the Plaintiffs' contention that they have a right of way, one rod in width, across Defendants' land along its westerly boundary from the highway to their own land.

Plaintiffs contend that the right of way was created and preserved as a matter of record title, and that, in the alternative, the right of way was created by prescriptive easement.

This complaint and counterclaim for equitable relief, heard without a jury by a Justice of the Superior Court, reduce to one question: whether a right of way exists as a legal easement across Defendants' land. The Justice found, as to Plaintiffs' claim resting on a record title, that the claimed right of way was based on a deed which reserved the right of way to a third party—a "reservation to a stranger"—and,

therefore, did not lawfully create or grant the claimed right of way. Additionally, the Justice found that no easement had arisen by prescription since certain elements of such an easement, namely adverse and continuous use for a period of at least twenty years, were not proven in the case.

The Plaintiffs appeal the denial of their claim for injunctive relief and the judgment for the Defendants. Plaintiffs argue that the Justice erred in his interpretation of the deeds and plans which constitute the respective parties' claims of title, that he erred further in his factual findings regarding creation of the easement by prescription and that he erroneously excluded certain testimony which Plaintiffs contend could have substantiated their argument for prescriptive easement.

We deny Plaintiffs' appeals and affirm the decisions of the Superior Court.

 In treating the first issue on appeal, whether the right of way was created and preserved as a matter of record title, we look to the deeds and plans which constitute the chains of title to the respective parties' subject parcels, these deeds and plans having been admitted by agreement of the parties. The trial court concluded that:

> "The language as contained in the 1870 deed of conveyance from Chase to Smith of Lots No. 3 and 4[3] was in the nature of a reservation to a stranger and, consequently has no more effect to the owner of Lot No. 1[4] than being a 'claim of right'."

We find this conclusion amply supported in the deeds and plans. The easement was first described in the 1851 deed to the so-called servient estate from Nathaniel Phillips to Frederick K. Carle.[5] In February,

1. Book 1875, page 857.

2. The Defendants received their title by a deed recorded in Book 1843, page 554, York County Registry of Deeds.

3. Lot numbers refer to a diagram utilized in the trial court. Here, Lot No. 3 is the Defendants' property and Lot No. 4 is a parcel not involved in the present controversy.

4. Lot No. 1 refers to the southwesterly parcel of Plaintiffs' two parcel plot.

5. York County Registry of Deeds, Book 228, page 2. That portion of the deed reads: ". . . reserving to myself, my heirs and assigns, over and across said land a right of way for ingress and egress over said land from the main travelled road to my house of one rod width." Although this is the first description of the right of way, there is some question, based on the evidence before us, whether this language actually created an easement appurtenant to the dominant es-

1865, Carle, who apparently had sold and repurchased this lot during the interim period, deeded the land to Horace Phillips.[6] Since Horace Phillips also owned the so-called dominant estate at this time (conveyed to him in 1838[7] and held continuously until 1875[8]), and since ownership of both parcels was in fee, we find that whatever claim to a right of way which might have existed ended with merger of the subject lots in one owner. Dority v. Dunning, 78 Me. 381, 387, 6 A. 6, 9 (1886); Smith v. Dickson, Me., 225 A.2d 631, 636 (1967). Horace Phillips' subsequent sale of the "servient" estate to Frank Seavey in September, 1865[9], failed to revive the easement despite reference to the deed from Nathaniel Phillips to Frederick Carle (1851) "for a further description of the same [property]." Once extinguished, as here by merger, the easement does not come again into existence upon a separation of the former servient and dominant estates unless a proper new grant or reservation is made. 28 C.J.S. Easements § 57c.

■ In several subsequent recorded sales of the so-called servient estate,[10] there were merely continued references to past deeds and no mention of an easement until 1870 in the deed from Joseph Chase to Maria Smith[11] which includes the following clause:

> "Excepting and reserving however from this conveyance the right of passage-way which Horace Phillips has over the land above–described said right and privilege hereby reserved being the right to said Phillips and his privies in estate to use a strip one rod in width next to said Hill and Andrews' land (formerly of Oliver Dyer) to pass to and from the land of said Phillips."

The effect of this clause, as the Justice held, is to make a reservation to a stranger which may not by its own force pass such rights to the Defendant. Hodge v. Boothby, 48 Me. 68, 70 (1861); Haverhill Savings Bank v. Griffin, 184 Mass. 419, 68 N. E. 839 (1903). Plaintiffs' argument that the Superior Court's ruling regarding the legal effect of this reservation to a stranger was in error fails in its assumption that the reservation constituted an easement or way created by grant.

■ In treating the second issue on appeal—whether the right of way was an easement created by prescription—we again find the Superior Court's conclusion well supported in both fact and law. The elements of a prescriptive easement are set

tate (including land now owned by the Plaintiffs), for at the time of the deed from N. Phillips to F. K. Carle in 1851, N. Phillips no longer held the dominant estate. In a deed of 1838, (York County Registry of Deeds, Book 163, page 214), N. Phillips had sold the dominant estate to H. Phillips, and H. Phillips held that property until his death and the subsequent partitioning of the estate in 1875 (York County Registry of Deeds, Book 350, page 293). However, this question is moot in view of the effect of a subsequent merger of estates and the resulting extinction of any right of way. See discussion, infra.

6. York County Registry of Deeds, Book 290, page 91.

7. York County Registry of Deeds, Book 163, page 214.

8. York County Registry of Deeds, Book 350, page 293.

9. York County Registry of Deeds, Book 294, page 237.

10. York County Registry of Deeds, Book 295, page 524; Book 309, page 423; Book 312, page 271, Book 311, page 416; Book 317, page 59. The Plaintiffs contend that some of these deeds were actually equitable mortgages, and that the Court erred in its ruling that Loren Foss acquired title in 1868 (York County Registry of Deeds, Book 311, page 416). However, the fact that some of these intervening deeds may have been equitable mortgages does not alter the effect of merger under Horace Phillips and Phillips' subsequent failure to revive the easement in his sale to Seavey in September, 1865, nor does it alter the ineffectiveness of a subsequent reservation to Horace Phillips in the deed from Chase to Smith in 1870.

11. York County Registry of Deeds, Book 319, page 425.

forth in Dartnell v. Bidwell, 115 Me. 227, 230, 98 A. 743, 744, 5 A.L.R. 1320, 1322 (1916):

> "A prescriptive easement is created only by a continuous use for at least 20 years under a claim of right adverse to the owner, with his knowledge and acquiescence, or by a use so open, notorious, visible, and uninterrupted that knowledge and acquiescence will be presumed. Each of these elements is essential and each is open to contradiction."

The Superior Court Justice found that "the usage failed to show continuity of occupation requisite to establish an adverse interest for a twenty year period" and that "[t]he open, notorious and visible conduct of the Defendants came to light only in 1964". We are guided in our decision here by Rule 52(a) of the Maine Rules of Civil Procedure which states that "[f]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." In this case, there was evidence of only sporadic use of the right of way prior to 1964 for such purposes as wood cutting, picnicking, reading, some moving of cattle and occasional berrying. It is apparent that the Presiding Justice considered that this did not constitute continuous use. We are satisfied that the Court's finding was not clearly erroneous.

■ Plaintiffs also contend that the Court erroneously excluded testimony of the next previous owner of Defendants' lot as to his awareness that a right of way across this lot had been reserved to owners of the Plaintiffs' lot. Our interpretation of the Justice's remarks at the time this line of testimony was objected to is that the Justice was inquiring of counsel as to the significance of the witnesses' belief as to the existence of a right of way, rather than excluding such testimony.[12]

■ However, even if this testimony was excluded, and even if it was erroneously excluded, the Plaintiffs could not have been prejudiced, as Plaintiffs claim, on the issue of adverse use as the element of adverse use which the Justice found to be absent was that of continuity of such use over a twenty-year period.

The entry will be:

Appeals denied.

WEBBER, J., sat at oral argument but retired before the adoption of this opinion.

12. "Q Are you now in court in this court being sued for a breach of warranty by Mr. Holman?
MR. WOOD: I object to that, your Honor. There are collateral matters.
THE COURT: What is the purpose?
MR. WOOD: In addition, your Honor—
MR. FITANIDES: The purpose is to prove to the Court that this man is aware and by his pleadings is aware.

. . . . .

THE COURT: I understand that. . . . But I would be quite interested in your explaining to me what significance knowledge has one way or another. Whether this man had knowledge of the right of way in the deed, or not, what significance does that have in this matter?

. . . . .

Q Mr. Norrad, is it your understanding that the failure of your deed to Holman was the result of the error of your attorney that made out your deed that left out that right of way?
MR. WOOD: Object. Object.
THE COURT: Once again, I don't quite understand the significance of that question. I think that the issue here is whether or not this land was continuously used for a period of twenty years. I think that is the limit of this issue. I don't—what he thought and what he was aware, legally or otherwise, is immaterial, isn't it?
MR. FITANIDES: Other than his acknowledgment, your Honor.
THE COURT: I know. But I mean, what difference does it make whether he thought a right of way existed, or he thought one didn't exist? It is a legal issue, or it becomes one, anyway. Doesn't it?"