******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.*
PAUL A. QUINTILIANO
(AC 43137)

Bright, C. J., and Moll and DiPentima, Js.

*Syllabus*

Convicted of the crime of criminal mischief in the first degree in connection with a property dispute with his neighbor, C, the defendant appealed to this court, claiming, inter alia, that there was insufficient evidence to demonstrate that he had no reasonable ground to believe that he had a right to remove certain trees C had planted on C's land. The defendant claimed to enjoy deeded easement rights to the land in question. C planted a number of trees, some of which were located along the border of the land subject to the easement, and the defendant, following advice from attorneys, subsequently dug up the trees along the border. The state charged the defendant with criminal mischief in the first degree for intentionally causing damage in excess of $1500 to C's tangible property without a reasonable ground to believe he had the right to do so. *Held*:

1. The trial court's finding that the trees were beyond the easement area was clearly erroneous; there was insufficient evidence in the record to establish the precise location of the easement area or the location of the trees in relation thereto, as none of the maps admitted into evidence established where the deeded easement actually ended or depicted the location of the trees, the witness testimony was imprecise and inadequate to support the court's finding, and there was no expert testimony presented on the topic of the location of the easement area or the trees.

2. The evidence adduced at trial was insufficient to support the defendant's conviction of criminal mischief in the first degree: the trial court failed to recognized the defendant's right under Connecticut easement law to remove the obstructing trees from his right-of-way without first seeking judicial intervention; moreover, because the court failed to recognize the defendant's right, it erred in finding that it was not credible that an attorney would advise his client that the client was entitled to remove property that was blocking access to a right-of-way granted in an easement, and, as a result, improperly concluded that, as a matter of law, the defendant could not have had a reasonable ground to believe that he had the right to remove the trees from the easement area; accordingly, a judgment of acquittal was directed.

Argued February 18—officially released August 17, 2021

*Procedural History*

Substitute information charging the defendant with the crime of criminal mischief in the first degree, brought to the Superior Court in the judicial district of Waterbury, geographical area number four, and tried to the court, *Crawford, J.*; thereafter, the court denied the defendant's motion for a judgment of acquittal; judgment of guilty, from which the defendant appealed to this court. *Reversed*; *judgment directed*.

*Alexander Copp*, with whom were *Neil R. Marcus*, and, on the brief, *Barbara M. Schellenberg*, for the appellant (defendant).

*Linda F. Currie*, senior assistant state's attorney, with whom, on the brief, were *Maureen Platt*, state's attorney, and *Joseph Danielowski*, senior assistant state's attorney, for the appellee (state).

*Opinion*

MOLL, J. In this criminal appeal, which arises out of a property dispute between neighbors, the defendant, Paul A. Quintiliano, appeals from the judgment of conviction, rendered after a trial to the court, of criminal mischief in the first degree in violation of General Statutes § 53a-115 (a) (1).[1] On appeal, the defendant claims, inter alia, that there was insufficient evidence to demonstrate that he had no reasonable ground to believe that he had a right to remove certain trees planted by his former neighbor, Brian Collins, on a portion of land then owned by Collins with respect to which the defendant claimed to enjoy deeded or prescriptive easement rights.[2] We agree and, accordingly, reverse the judgment of the trial court.

The following facts, as set forth in the court's memorandum of decision, are relevant to our decision. "On June 25, 2017 . . . Collins, and the defendant . . . owned lots in a subdivision in Southbury. [Collins] owned lot number [23.04], and the defendant owned lot number [23.03] . . . . There are two warranty deeds . . . and a quitclaim deed . . . . Each [deed] references a common driveway agreement, hereinafter referred to as a CDA. . . . The CDA includes an easement granted by the owner of lot number [23.04] to the owner of lot number [23.03]. The easement granted a perpetual right-of-way for ingress and egress, by foot or vehicle, including the right to construct, pave and maintain a driveway and use the same in common with the owner, present and future. The easement area is within the northerly most 1000 feet of the 30 foot wide portion of lot number [23.04] adjoining the westerly boundary of lot number [23.03] and lot number [23.02]. . . . The CDA was signed on June 2, 1993, and the easement runs with the land.

"Prior to 2013, the defendant had a box truck and small white tent parked in the corner of his lot. He used this for storage. His wife said [that] the small tent had been destroyed. [Collins] gave the defendant permission to access the storage area from the common driveway. [The defendant's wife] also stated [that] the permission was granted approximately one year before [Collins] started planting, and [Collins] had promised to leave access to the storage area on the property. And that was granted about one year before [Collins] started planting the trees.

"In 2013, the defendant erected a very large green tent and attached it to the box truck located on his property. The defendant expanded his excavating business in 2013. [Collins] stated that the defendant never came down to the area prior to erecting the large green tent. He was always in the back area on his property—on his own property. [The defendant's wife] said the defendant went down twice a week, and she drove

down once every other week as she used the storage area to store items connected with her eBay business. However, it is unclear when she started her eBay business. The defendant did not live on the premises between 2002 and 2010. Furthermore, the defendant could access the storage area on his own lot without having to use the common driveway. With the expansion of his excavating business, the large green tent was needed to store additional equipment connected with that business. After the erection of the large green tent, the defendant started coming down to the area. . . .

"In 2013 or 2014, [Collins] informed the defendant he would be planting trees. On June 3, 2016, [Collins] paid Green Giant Arborvitaes Rapid Grow [$5423.21] for forty-three or forty-four trees to include the planting of the trees . . . . The trees were planted on June 11, 2016, eighteen of which were along the border beyond the thirty foot wide portion of lot number [23.04] adjoining the westerly boundary of lot number [23.03] and lot number [23.02]. After [Collins] planted the trees, the defendant informed him that he would tear out the trees. [Collins] also noticed one tree had been knocked over.

"[Collins] called the police and Officer [Brian] McKirryher responded. The defendant told the officer he had used the area for fifteen years. Officer McKirryher informed the defendant that any right he believed he had should be determined in a civil proceeding, but if he ran over the trees, there would be consequences. [Collins] said the officer told the defendant that it would be a crime.

"Thereafter, the defendant sent a letter to [Collins] informing him that he had four days to remove the trees and that his attorney had advised him he could take out ten of the trees. . . .

"[O]n June 25, 2017, eighteen of the trees had been dug up and thrown on the side of the road . . . . [Collins] called the police. When the officer arrived, he saw the trees uprooted and on the side of the road in dirt. He also saw the defendant's excavator. Later he saw the defendant on the excavator, and he also saw the area where the defendant had ripped up the trees. The defendant informed the officer that the trees wouldn't die if they were watered and replanted and that his attorney had advised him he had a right to access the large green tent he had put up. And the trees blocked the access to his shed, and his attorney told him he had a right to tear them up. The officer informed the defendant that he had a right to access his property."

The defendant subsequently was charged by way of a substitute information with criminal mischief in the first degree in violation of § 53a-115 (a) (1), which provides that "[a] person is guilty of criminal mischief in the

first degree when . . . [w]ith intent to cause damage to tangible property of another and having no reasonable ground to believe that such person has a right to do so, such person damages tangible property of another in an amount exceeding one thousand five hundred dollars.''

A bench trial took place on March 18, 19, 20 and 25, 2019. On March 19, 2019, after the close of the state's case-in-chief, the defendant orally moved for a judgment of acquittal on the ground that the state had failed to present sufficient evidence of each element to convict him of criminal mischief in the first degree beyond a reasonable doubt. The court denied the motion. On March 20, 2019, after the close of evidence, the defendant again moved for a judgment of acquittal. The court deferred ruling until after closing arguments and subsequently denied the motion. The defendant additionally submitted to the court written proposed legal findings as to each element of § 53a-115 (a) (1). The court rejected all of the defendant's proposed legal findings.

On March 25, 2019, the court found the defendant guilty of criminal mischief in the first degree in violation of § 53a-115 (a) (1). With specific regard to the third element of § 53a-115 (a) (1) (i.e., no reasonable ground to believe that one has the right to cause damage to tangible property of another), the court found: "The defendant had no reasonable ground to believe he had a right to tear out the trees and dump them on the side of the road. No reasonable person in his situation considering his point of view would believe he had a right to damage the trees. He had been given permission to access the storage area and he hardly—he never used or seldom used that until 2013, after he erected the large green tent and attached it to his box truck. His wife stated that they had been given permission approximately one year before the planting and that [Collins] in the planting had promised access. The defendant could access the storage area on his property without having to cross [Collins'] property. So if there is a right, then there was no need to be given permission or a promise to have access to the storage area. And the access to the storage area on his own property . . . over [Collins'] property is different than having access to a storage area on his property.

"It is not credible that an attorney would advise the defendant that the remedy for blocking a right-of-way granted in an easement is to destroy the property that is blocking access.[3] But, again, this is access to the shed and the tent, which is a storage area as opposed to blocking access in terms of ingress and egress onto his own property. The proper course of conduct as suggested by the officer was to go to civil court and have the question about the boundaries or the extent of the easement with the right for ingress and egress resolved in that forum. That advice, if given, the defen-

dant and his wife did not follow it in terms of the advice from counsel, according to [the defendant's wife], because they were not that kind of people, but they clearly did not, in 2016, after saying if it wasn't removed in four days, they had a right to tear the trees out or, at a minimum, ten of the eighteen that were ripped out.

"In Connecticut, a [prescriptive] easement is acquired with continued and uninterrupted use for fifteen years. The state presented evidence that showed that there was no continued and uninterrupted use for fifteen years, that use being access to [the defendant's] storage shed that was located on his property. There was no evidence that the defendant could not enter or leave his property. To the contrary, he built a driveway off of the common driveway down to his own property. So there was definitely ingress and egress to his lot. So under the circumstances as laid out, no reasonable person would believe that, being in the defendant's position, that he had a right to access the storage shed on his own property via [Collins'] property."[4] (Footnote added.)

On June 14, 2019, the court sentenced the defendant to eighteen months of incarceration, execution suspended, followed by three years of probation. The court also ordered the defendant to pay $2218.58 in restitution. This appeal followed. Additional facts and procedural history will be set forth as necessary.

The defendant claims on appeal that the evidence presented at trial was insufficient to prove beyond a reasonable doubt that he had no reasonable ground to believe that he had a right to remove the trees. In support of this claim, the defendant makes, inter alia, three contentions that we find dispositive: (1) the state failed to establish the location of the deeded easement area and the location of the trees in relation thereto; (2) the trial court failed to recognize the right of a dominant estate holder of a right-of-way easement, appurtenant to his or her adjoining land, to remove obstructions placed in the right-of-way that materially interfere with his or her reasonable enjoyment of the easement; and (3) as a result of the foregoing failure, the court further erred by not finding it credible that an attorney would so advise his client.[5] We agree with each of these contentions.[6]

Before we address the merits of the defendant's claim, we set forth the applicable standard of review. "In reviewing a sufficiency of the evidence claim, we apply a [two part] test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . On appeal, we do not ask whether there is a reasonable view of the

evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [fact finder's] verdict of guilty." (Internal quotation marks omitted.) *State* v. *Bradbury*, 196 Conn. App. 510, 515, 230 A.3d 877, cert. denied, 335 Conn. 925, 234 A.3d 980 (2020).

"A challenge to the sufficiency of the evidence is based on the court's factual findings. The proper standard of review is whether the court's findings were clearly erroneous based on the evidence. . . . A court's finding of fact is clearly erroneous and its conclusions drawn from that finding lack sufficient evidence when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Emphasis omitted; internal quotation marks omitted.) *State* v. *Edwards*, 148 Conn. App. 760, 765, 87 A.3d 1144 (2014). "[A] defendant is entitled to a judgment of acquittal and retrial is barred if an appellate court determines that the evidence is insufficient to support the conviction." (Internal quotation marks omitted.) *State* v. *Tenay*, 156 Conn. App. 792, 801–802, 114 A.3d 931 (2015).

I

As a threshold matter, we first turn to the defendant's argument that the state failed to establish the location of the deeded easement area and the location of the trees in relation thereto. We agree with the defendant.[7]

By way of review, in its memorandum of decision, the trial court stated that "[t]he CDA includes an easement granted by the owner of lot number [23.04] to the owner of lot number [23.03]. The easement granted a perpetual right-of-way for ingress and egress, by foot or vehicle, including the right to construct, pave and maintain a driveway and use the same in common with the owner, present and future. The easement area is within the northerly most 1000 feet of the 30 foot wide portion of lot number [23.04] adjoining the westerly boundary of lot number [23.03] and lot number [23.02]. . . . The CDA was signed on June 2, 1993, and the easement runs with the land." The court additionally found that "[t]he trees were planted on June 11, 2016, eighteen of which were along the border *beyond* the thirty foot wide portion of lot number [23.04] adjoining the westerly boundary of lot number [23.03] and lot number [23.02]." (Emphasis added.) Stated differently, the court found that the trees were planted "beyond" the easement area and concluded that, "under the circumstances as laid out, no reasonable person would believe that, being in the defendant's position . . . he had a right to access the storage shed on his own property via [Collins'] property."

Mindful of the standard of review principles recited previously, we conclude that, to the extent the court found that the trees were planted outside the easement area, such finding was clearly erroneous because there was insufficient evidence to establish the precise location of the easement area or the location of the trees in relation thereto. As an initial matter, none of the maps admitted into evidence (1) establishes where the 1000 foot deeded easement actually ends, or (2) depicts the location of the trees. In addition, the testimony of the witnesses who testified as to these issues—Collins and the defendant's wife—was imprecise and simply inadequate to support the court's finding that the trees were planted outside the easement area. Finally, there was no expert testimony on which the trial court could rely to make such finding. See *Thurlow* v. *Hulten*, 173 Conn. App. 694, 725, 164 A.3d 858 (2017) ("[w]here the testimony of witnesses as to the location of the land described in deeds is in conflict, it becomes a question of fact for the determination of the court which may rely upon the opinions of experts to resolve the problem and it is the court's duty to accept that testimony or evidence which appears more credible" (internal quotation marks omitted)).

In light of the foregoing, the court's finding that the trees were beyond the easement area is clearly erroneous.

## II

We next address the defendant's contention that the trial court erred in failing to recognize the legal principle that "any easement that grants a right of ingress and egress includes the right to remove any structure which constitutes a material obstruction to the rightful enjoyment of the easement, or which renders that enjoyment less beneficial or convenient than before its erection." The defendant also makes the related contention that, as a result of the foregoing failure, the court further erred by not finding it credible, effectively as a matter of law, that an attorney would so advise his client. We agree with both contentions.

We first briefly address the applicable standard of review. "When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Northeast Ct. Economic Alliance, Inc.* v. *ATC Partnership*, 256 Conn. 813, 827, 776 A.2d 1068 (2001). Although we generally defer to "the determinations of the trial court regarding factual findings on issues of credibility, unless they are clearly erroneous," the scope of our review remains plenary when the ultimate issue before the trial court was not truly a credibility question, but rather a question of law. *Lisiewski* v. *Seidel*, 72 Conn. App. 861, 870, 806

A.2d 1121; see id., 870–71 (in case involving property dispute, when deed at issue contained clear and unambiguous language, trial court's determination that plaintiff's expert witness testified credibly regarding latent ambiguity in deed did not restrict this court's plenary review of legal questions regarding proper construction of deeds), cert. denied, 262 Conn. 921, 812 A.2d 865 (2002), and cert. denied, 262 Conn. 922, 812 A.2d 865 (2002).

Our analysis of this claim requires a discussion of certain principles of Connecticut easement law. "It is well settled that [a]n easement creates a nonpossessory right to enter and use land in the possession of another and obligates the possessor not to interfere with the uses authorized by the easement." (Internal quotation marks omitted.) *Celentano* v. *Rocque*, 282 Conn. 645, 660, 923 A.2d 709 (2007). "An easement has six primary characteristics: (1) it is an interest in land in the possession of another, (2) it is an interest of a limited use or enjoyment, (3) it can be protected from interference by third parties, (4) it cannot be terminated at will by the possessor of the servient land, (5) it is not a normal incident of a possessory land interest, and (6) it is capable of creation by conveyance . . . . An easement may be affirmative or negative; appurtenant or in gross . . . .

"An affirmative easement authorizes uses of land that would be viewed as actionable trespasses if no easement existed. A right of way across a neighbor's property is a common example of an affirmative easement. . . .

"Although an easement does not create an ownership interest in the servient estate but creates a mere privilege to use the servient estate in a particular manner, an easement involves limited rights to enjoy or to restrict another's use of property. . . . If an easement is created to benefit and does benefit the possessor of the land in his use of the land, the benefit of that easement is appurtenant to the land. The land is being benefited by the easement in the neighboring property. . . . An important characteristic of appurtenant easements is that they continue in the respective properties, rather than being merely personal rights of the parties involved. The easement's benefit or its burden passes with every conveyance affecting either the servient or dominant property." (Citations omitted; internal quotation marks omitted.) *Kepple* v. *Dohrmann*, 141 Conn. App. 238, 246, 249–50, 60 A.3d 1031 (2013).

Our Supreme Court previously has recognized the right of a dominant estate holder of a right-of-way easement, appurtenant to his or her adjoining land, to remove obstructions placed in the right-of-way that materially interfere with his or her reasonable enjoyment of the easement. In *Blanchard* v. *Maxson*, 84 Conn. 429, 80 A. 206 (1911), the plaintiff had erected a

fence within a laneway to prevent the defendant and his tenants from having access thereto from a certain point on the defendant's land. The defendant later removed the fence, "doing no other damage than was necessary to accomplish that result." Id., 432 (preliminary statement of facts and procedural history). The plaintiff brought an action sounding in trespass, and judgment was rendered for the defendant. Id., 430 (same). On appeal, our Supreme Court found no error, concluding that the laneway was subject to a right-of-way easement appurtenant to the defendant's adjoining land. Id., 433. The court reasoned: "The fact that the defendant has never owned the fee to any part of the land covered by the lane does not militate against his right to keep it free from obstructions. Any structure which could not properly be placed thereon, and which constituted an obstruction to his free and full use of the lane in his rightful enjoyment of the easement, would be removable by him as a nuisance. *Greist* v. *Amrhyn*, 80 Conn. 280, 290, [68 A. 521 (1907)]. The fact that the fence which he took down did not wholly prevent passage up and down the lane did not save it from being an unlawful obstruction. Erected as it was, without reasonable justification or purpose, it was a nuisance abatable by him, if it materially interfered with his reasonable enjoyment of the easement, or rendered that enjoyment less beneficial or convenient than before its erection." *Blanchard* v. *Maxson*, supra, 435–36; see also *Smith* v. *Muellner*, 283 Conn. 510, 518, 932 A.2d 382 (2007) ("The owner of the soil [over which a right-of-way exists] retains full dominion over his land subject merely to the right-of-way. . . . The owner may make any use of his land which does not interfere with a reasonable use of the way." (Internal quotation marks omitted.)); *Greist* v. *Amrhyn*, supra, 290–91 ("[O]ne in possession of premises to which an easement is appurtenant may have an action for a disturbance or obstruction of such easement. A tenant or a cestui que trust in possession of the dominant estate may have such an action for the injury to his possession. . . . It follows that he may remove the obstruction as a nuisance." (Citations omitted.)).

The state has not cited any authority—and we are not aware of any—that stands for the proposition that a dominant estate holder, with respect to a right-of-way easement appurtenant to his or her adjoining land, must seek judicial intervention prior to exercising the right to remove obstructions placed in the right-of-way that materially interfere with his or her reasonable enjoyment of the easement. The lack of such a requirement necessarily was implied in the aforementioned cases and was expressly acknowledged in the ancient case of *Quintard* v. *Bishop*, 29 Conn. 366, 373 (1860). In *Quintard*, our Supreme Court rejected the argument that, rather than clearing an obstruction (i.e., a fence) from the subject right-of-way, the defendant covenantee

should have brought a civil action against the covenantor who placed the obstruction thereon. Id. The court stated: "[I]f the defendant had a clear right of way, he might insist that it should be in a condition to be used; and as the fence was removed avowedly for this purpose, he did no more than the law justified him in doing." Id.; see also 28A C.J.S. 640–41, Easements § 236 (2019) ("An obstruction placed in a private way is a nuisance, and may be removed by any person having a right to use the right-of-way, provided the person can do so without a breach of the peace. . . . In removing obstructions the owner of the dominant tenement must do no unnecessary damage. *If the owner of the land has covenanted to keep the way open, the grantee need not in case of an obstruction resort to an action for a breach of the covenant, but may herself remove the obstruction.*" (Emphasis added; footnotes omitted.)).

In the present case, the trial court failed to recognize the foregoing right under Connecticut easement law, stating, in the form of a credibility determination relating to testimony by the defendant's wife, that "[i]t is not credible that an attorney would advise the defendant that the remedy for blocking a right-of-way granted in an easement is to destroy the property that is blocking access. . . . The proper course of conduct as suggested by the officer was to go to civil court and have the question about the boundaries or the extent of the easement with the right for ingress and egress resolved in that forum." Thus, the court improperly concluded that, as a matter of law, the defendant could not have had a reasonable ground to believe that he had the right to remove the obstructions from the easement area without first seeking judicial intervention.

In considering the foregoing errors, we find *State* v. *Hoskins*, 35 Conn. Supp. 587, 401 A.2d 619 (App. Sess. 1978), on which the defendant relies, to be particularly instructive. In *Hoskins*, the Appellate Session, inter alia, set aside the judgment of conviction of criminal mischief in the third degree pursuant to General Statutes (Rev. to 1975) § 53a-117, which also required the state to prove that the defendant had "no reasonable ground to believe that he had a right to [damage tangible property of another]." Id., 595. In that case, the defendant was a minister of a church who painted a religious message on plywood boards attached to the exterior of the church by the city of Hartford. Id., 589. Because the ownership of the plywood boards was unclear, the Appellate Session reasoned that, if the boards were church property, then the city's consent was not needed and the facts supported "the reasonable hypothesis that the defendant . . . painted the message with the church's acquiescence, if not its blessing." Id., 595–96. On the basis of the record before it, the Appellate Session concluded that the trial court "could not find beyond a reasonable doubt that when he painted the message the defendant had no reasonable ground to

believe that he had a right to do so." Id., 596.

Similarly here, based on the record before it, the court could not find beyond a reasonable doubt that when the defendant removed the trees, he had no reasonable ground to believe that he had a right to do so. Because the evidence is insufficient to support the conviction, the defendant is entitled to a judgment of acquittal.

The judgment is reversed and the case is remanded with direction to render a judgment of acquittal.

In this opinion the other judges concurred.

[1] General Statutes § 53a-115 provides in relevant part: "(a) A person is guilty of criminal mischief in the first degree when: (1) With intent to cause damage to tangible property of another and having no reasonable ground to believe that such person has a right to do so, such person damages tangible property of another in an amount exceeding one thousand five hundred dollars . . . .

"(b) Criminal mischief in the first degree is a class D felony."

[2] The defendant also claims that the state presented insufficient evidence of (1) intent to cause damage to tangible property of another and (2) damage to tangible property of another in an amount exceeding $1500. In light of our resolution of the defendant's first claim, we need not address his other claims.

[3] During trial, the defendant's wife testified that two attorneys, Attorney Walter Flynn and Attorney Neil Marcus, separately advised the couple that they could uproot the trees. More specifically, she testified that Attorney Flynn advised them that "[b]ased on the deed, [they] had the right to drive over the trees . . . ." In addition, she testified that her belief that she was able to use the driveway to get to the shed was "based on the deed and that [they] used it for over twenty years and . . . were informed [they] could just drive over them."

[4] The court further found that "there [was] no evidence that the defendant was told he could *uproot* the trees. The advice [of counsel] appears, from the testimony of [Collins] and [the defendant's wife], that they were told that they had an easement and they had a right-of-way. The easement gives them the right for ingress and egress onto their lot." (Emphasis added.)

[5] Because the defendant's second and third contentions are closely interrelated, we address them together in part II of this opinion.

[6] For ease of discussion, we address the defendant's contentions in a different order than they are set forth in his principal appellate brief.

[7] In light of our determination that the court erred with respect to the deeded easement and the rights related thereto, it is unnecessary for us to reach the defendant's arguments challenging the trial court's finding that a prescriptive easement did not exist. Thus, unless the context dictates otherwise, our references in this opinion to the "easement" are to the deeded easement.